■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BERNADETTE POWELL, Appellant. — Appeals (1) from a judgment of the County Court of Tompkins County (Dean, J.), rendered June 29, 1979, upon a verdict convicting defendant of the crime of murder in the second degree, and (2) by permission, from an order of said court, entered January 15, 1980, which denied, without a hearing, a motion to vacate the judgment of conviction. The defendant Bernadette Powell was charged with fatally shooting her ex-husband on July 9, 1978. Defendant and decedent, Herman Smith, were married April 18, 1970. Their son, Trozell, was born in February, 1972 and the family resided in Vestal, New York. Defendant and others testified at trial that approximately two years after their marriage, Mr. Smith began to drink

---

excessively and to physically abuse defendant. As a result, defendant divorced decedent on July 6, 1977. Thereafter, defendant and her son resided together in Ithaca, and Mr. Smith resided in Endicott. Following the divorce, defendant and decedent lived apart without incident until June of 1978. At trial, defendant testified to the following sequence of events: On June 27, 1978 defendant brought Trozell to decedent's house for an extended visit with his father. Upon arriving, defendant found her ex-husband and several others smoking marihuana. She reported the misconduct to the police. Several days later, at 12:30 A.M. on July 9, 1978, the date of the fatal shooting, defendant returned to decedent's home to pick up Trozell. Mr. Smith insisted on driving defendant and Trozell back home in defendant's truck. Shortly after Mr. Smith began driving, he displayed a revolver and began menacing defendant with it, and, further, he angrily expressed his disapproval of defendant's telephone call to the police on June 27, 1978. Instead of returning defendant and Trozell to their home, decedent began searching for a motel in the Ithaca, New York, area. Although decedent left the truck periodically to check for vacancies at various motels, defendant never attempted to leave the truck because decedent threatened to shoot her if she did. Mr. Smith finally obtained a room at the Holiday Inn in Lansing, New York. Trozell went to sleep in one of the two beds in the room. Mr. Smith then ordered defendant to lie on the other bed with her back to him. After Mr. Smith fell asleep, defendant pulled the revolver from the front of Smith's pants. As she removed the gun, Mr. Smith awoke and defendant fired the revolver and killed him. She immediately ran to the front desk for help. After the police arrived, defendant made a statement wherein she denied ever seeing the murder weapon prior to the day of the shooting. Moreover, she denied owning a gun or knowing how to shoot one. At the trial, Albert Smith, a witness for the prosecution, testified that he had sold the murder weapon and a box of bullets to defendant on June 26, 1978. He was certain it was the gun he sold defendant because he identified his initials on the revolver's barrel. There was other ample evidence adduced at trial which contradicted the sequence of events as testified to by defendant. Diane Nelson, a former close friend of defendant and at whose apartment defendant had lived for two months prior to the shooting, testified that defendant had expressed a desire to cause harm to her ex-husband. She also testified that Albert Smith and defendant had met and fired a revolver together on June 26, 1978. Ms. Nelson further recounted that bullets were found in defendant's bureau drawer. This testimony was fully corroborated by another friend of defendant's, Lisa Johnson. Moreover, other witnesses testified that defendant had stated her desire to kill her ex-husband. On March 22, 1979, the jury returned a verdict finding defendant guilty of murder in the second degree. Defendant moved to vacate the judgment pursuant to CPL 440.10. This appeal from the denial of that motion ensued as well as an appeal from the judgment of conviction. The central issue on the appeal of the judgment of conviction concerns the prosecution's conduct at trial. It is defendant's contention that the prosecutor's cross-examination of her, as well as his questioning of other witnesses, was deliberately intended to portray her to the jury as a willing participant in sexually related physical abuse, rather than as a "battered woman". The effect was to undermine defendant's claim that her ex-husband was a violent and frightening person against whom she was justified in using deadly physical force (Penal Law, art 35), and to negate the affirmative defense of extreme emotional disturbance (Penal Law, § 125.25, subd 1, par [a]). This prosecutorial conduct, defendant continues, was egregiously wrong since it was not based on any evidence that she was a willing partner to these abuses, and, accordingly, created in the minds of the jurors the view that she was a sexual masochist rather than a frightened, intimidated and battered

woman. Such conduct by the District Attorney, the argument concludes, created such a prejudicial climate that impartial jury consideration of the defense of justification was impossible. We disagree. Where, as here, evidence of the victim's violent temperament is introduced by the defense to show a state of mind which justified the defendant's actions at the time of the incident in question, the prosecution should be given a fair opportunity to dispute defendant's contention "by vigorous cross-examination of the defendant and his witnesses" (People v Miller, 39 NY2d 543, 552-553). In the instant case, defendant, in her attorney's opening statement to the jury as well as in her own testimony and her witnesses' testimony, attempted to prove the violent nature of Mr. Smith in order to justify her actions. Thus, the prosecution was properly permitted to refute this allegation (People v Miller, supra, p 553). The District Attorney's attempt to demonstrate that the decedent's infliction of physical abuse upon defendant was a regular part of the couple's marital relationship to which both acquiesced, was a legitimate effort to contest defendant's contention that he was a violent man whom the defendant feared. We have carefully considered all of the defendant's other contentions, including her objection to the jury charge, and we fail to find any prejudicial error. Next, we turn to defendant's appeal from the denial of her motion to vacate the judgment of conviction (CPL 440.10). Defendant argues that the testimony of two psychologists, who were prepared to testify on the theories of "'learned helplessness' as applied to the battered woman" and "inaccurate myths and stereotypes concerning battered women" constitutes newly discovered evidence (CPL 440.10, subd 1, par [g]). The purpose of this testimony would be to explain why defendant remained married to the decedent for as long as she did and also to explain why she did not attempt to escape from her ex-husband on the day of the shooting. Since it is unlikely that such expert testimony would have changed the outcome of the trial, and, further, since the evidence was available before the trial and could have been discovered by the exercise of due diligence and, still further, since the testimony would have been cumulative to the issue of defendant's relationship with her ex-husband, we are of the view that the trial court properly denied defendant's motion (see People v Salemi, 309 NY 208, 215-216). Judgment and order affirmed. Mahoney, P.J., Sweeney, Kane, Casey and Herlihy, JJ., concur. [102 Misc 2d 775.]