■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v AURELIAN BALAN, Respondent. — Appeal by the People from an order of the Supreme Court, Queens County (Di Tucci, J.), dated

February 3, 1984, which granted defendant's motion pursuant to CPL 440.10 to vacate his judgment of conviction on the grounds of newly discovered evidence and in the interest of justice, and ordered a new trial.

Order reversed, on the law and the facts, and judgment reinstated.

After a jury trial, defendant Aurelian Balan was convicted of criminal possession of a weapon in the second degree, assault in the first degree, and reckless endangerment in the first degree, all of the counts arising from an incident which occurred in a private Roumanian club on Seneca Avenue in Queens, in the early morning hours of November 12, 1982.

At trial, the People presented two principal witnesses, Anatoli Rusanovskhi, the owner of the club, and George Puja, a patron, both of whom testified through a Roumanian interpreter, although they could understand some English.

Both of these witnesses had known defendant Balan for seven to eight years. Defendant apparently owned a jukebox located on the premises of the club, and defendant and Puja had been involved in a dispute involving Puja's car shortly before the incident in question.

According to the testimony adduced at trial, Puja was at the social club on the evening in question from about 11:30 P.M. on; there were only one or two other people there, including Rusanovskhi and the barmaid, Sylvia Stan. At some point, defendant, who is Hispanic, arrived with two Hispanic friends; he pointed at Puja and told his friends that "[t]his is the man". The four men then became involved in an argument during which one of the men with defendant pulled out a gun and the other pulled out a knife; neither Puja nor Rusanovskhi saw defendant with a gun, but defendant kept his hand under his jacket and threatened to shoot Puja.

Rusanovskhi attempted to break things up, and began pushing defendant towards the door, which had a window in the center. Rusanovskhi got the three men outside and shut the door when shots were fired through the door, two of which struck Rusanovskhi. Puja could not see what was happening outside, but Rusanovskhi testified that he could see defendant and one of the other Hispanic men firing. The police found bullet holes of differing sizes in the door. Shortly after the incident, Rusanovskhi commenced a civil suit against defendant seeking $1,000,000 damages.

Defendant testified at the criminal trial that the Hispanic men whom he did not know were already in the club when he

arrived in response to a call from Rusanovskhi, apparently concerning the jukebox. Puja began an argument with him, and when defendant knocked over a bread plate and made a loud noise, the Hispanic men jumped up, and one of the men pulled a gun and told everybody not to move. Defendant was pushed out the door while Rusanovskhi argued with one of the Hispanic men about money. Two other defense witnesses testified to seeing defendant outside the club at about the time in question, but that there was no shooting.

Following his conviction but prior to sentencing, defendant moved to set aside the verdict under CPL 330.30. The motion was based solely upon his attorney's affirmation, which recited that he, the attorney, had accompanied defendant's brother to the Roumanian club where the brother and Rusanovskhi had a conversation in an unidentified language which the attorney did not understand, after which defendant's brother told the attorney that Rusanovskhi was changing his testimony. Rusanovskhi now agreed, essentially, with defendant's version, and further, Rusanovskhi also said that he saw defendant drive away before the shooting occurred. Rusanovskhi stated that he had implicated Balan because, before they left, the two Hispanic men had warned him not to tell anyone. There was no explanation for Rusanovskhi's civil suit, however, or for the presence of the two Hispanic men in the Roumanian club in the first instance. There was no affidavit from Rusanovskhi, or from defendant's brother. That motion was denied.

Defendant was sentenced on December 22, 1982. Thereafter, in January, 1984, defendant moved pursuant to CPL 440.10 to vacate the judgment on the ground of newly discovered evidence, i.e., Rusanovskhi's recantation. As with the earlier motion, no sworn statements were submitted, but for defendant's new attorney's affirmation. Also attached was an unsworn statement signed by Rusanovskhi, which was taken from him by a private investigator and a recognized court interpreter of Roumanian, although there were no affidavits from these persons. This second statement differed from the first Rusanovskhi statement. According to this unsworn statement, defendant had been in the club twice on the evening in question which contradicted defendant's testimony at trial that he had only been there once. Shortly after defendant's second arrival, two Hispanic men "forced" their way into the club. This contradicted not only defendant's testimony at trial, but Rusanovskhi's first recantation, which placed the men in the club prior to defendant's arrival. The second statement also said that after Puja and defendant began to argue, one of the Hispanic men pulled a gun

and told everyone to freeze; Puja and defendant began to argue again, however, so the two Hispanic men took defendant outside and shots were fired. Absent from this statement was any allegation that Rusanovskhi saw defendant drive away before the shooting; rather, it was in accord with Rusanovskhi's trial testimony to the extent that it placed all three outside the door just before the shots were fired.

Additionally, the attorney's affirmation asserted that the barmaid, Sylvia Stan, had been ill at the time of trial and had been intimidated by Puja. An unsworn statement taken from Stan was also attached, which supported in part and contradicted in part Rusanovskhi's statement. However, Stan said that she did not see the actual shooters.

A hearing was held at which time Rusanovskhi invoked the Fifth Amendment upon the advice of counsel and the failure of the People to offer him immunity. The private investigator testified that Rusanovskhi told him that defendant was not guilty of the shooting; curiously, however, no such direct remark appears in Rusanovskhi's unsworn statement. Sylvia Stan also testified, but contrary to the attorney's affirmation, did not say that she was ill during the trial. In fact, it appears that she had been asked by defense counsel to be a witness, and had appeared in the courtroom during trial, yet was not called. Stan also did not support the attorney's allegations that she had been intimidated. The only facts adduced in defendant's favor at this hearing did not come from the testimony; rather, it appears that Rusanovskhi at one point had told the department of probation that defendant was not guilty, and defendant had successfully completed a court-ordered lie detector test.

Although the hearing court determined that defendant had failed to comply with the statute and had "failed to sustain any issue which would permit the setting aside of the jury verdict", the court nevertheless vacated that conviction and ordered a new trial "in order to avoid the very grave, no matter how slight, possibility that an innocent man may remain incarcerated because of false testimony and/or a legal technicality". Given the facts of this case, such a ruling was error.

To be considered "newly-discovered" so as to support a motion to vacate a judgment of conviction pursuant to CPL 440.10 (subd 1, par [g]), the evidence in question must meet the six criteria set out in *People v Salemi* (309 NY 208, 216, citing *People v Priori,* 164 NY 459, 472), specifically: "1. It must be such as will probably change the result if a new trial is granted; 2. It must have been discovered since the trial; 3. It must be such as could have not been discovered before the trial by the exercise of due

diligence; 4. It must be material to the issue; 5. It must not be cumulative to the former issue; and 6. It must not be merely impeaching or contradicting the former evidence".

Additionally, CPL 440.30 (subds 1, 6) require that such motions be based upon sworn allegations, and that the defendant prove "every fact essential to support the motion" by a preponderance of the evidence. It has been held that "[t]he power to grant an order for a new trial, based upon newly-discovered evidence, is purely statutory and such power may be exercised by the court only when the requirements of the statute have been satisfied, the determination of which rests in the sound discretion of the court" (*People v Powell,* 102 Misc 2d 775, 779, affd 83 AD2d 719; *Trippe v Calavito,* 524 F Supp 829, 834). Here, the hearing court specifically found that defendant had not met the criteria and had failed to carry his burden of proof, yet granted the motion in the interest of justice. Assuming that the court has the inherent discretion to grant a motion which is not in compliance with the statute (cf. *People v Carter,* 63 NY2d 530; *People v Goodfriend,* 64 NY2d 695), the interest of justice does not require that such relief be granted here, given the wholly untrustworthy nature of defendant's papers, and the circumstances surrounding the alleged recantation. Titone, J. P., Mangano, Gibbons and O'Connor, JJ., concur.