Norma Jane LUMPKIN, Petitioner–
Appellant,

v.

Howard RAY, Warden of Mable Bassett
Correctional Center, Robert H. Henry,
Attorney General of the State of Okla-
homa, Respondents–Appellees.

No. 91–5068.

United States Court of Appeals,
Tenth Circuit.

Oct. 9, 1992.

Al Silkey, Norman, Okl., for petitioner-
appellant.

Sandra D. Howard, Asst. Atty. Gen.,
State of Okl. (with Susan Brimer Loving,
Atty. Gen., on the briefs), Oklahoma City,
Okl., for respondents-appellees.

Before McKAY, Chief Judge,
McWILLIAMS, Circuit Judge, and
EISELE, District Judge.*

McKAY, Chief Judge.

Petitioner Norma Jane Lumpkin appeals
the denial of her petition for writ of habeas
corpus based on violation of her federal
constitutional rights of equal protection
and due process.[1]

Petitioner was charged with the first de-
gree murder of her husband. On retrial,
after a hung jury in the first proceeding,
the state court granted the state's motion
in limine barring testimony presented in
the first trial concerning petitioner's fear
of her husband and his violent behavior
unless petitioner showed sufficient other
evidence of self defense. The court con-
cluded at trial that petitioner had failed to
produce such other evidence. Thus, in the
proceeding in which she was convicted,
three lay witnesses and a physician were
not allowed to testify concerning petition-
er's fear of her husband and his previous
violent behavior.

■ After exhausting state post convic-
tion remedies, petitioner brought a petition

---

* Honorable G. Thomas Eisele, Senior District
Judge, United States District Court for the East-
ern District of Arkansas, sitting by designation.

1. We hereby grant certificate of probable cause
to appeal denial of this petition for writ of
habeas corpus, pursuant to 28 U.S.C. § 2253
(1988).

for writ of habeas corpus in the Federal District Court. The district court denied the petition, adopting the recommendation and findings of the magistrate. By the time the matter reached the federal court, the argument had matured into one focusing on the "battered woman syndrome." This now focused issue grows out of the struggle of the courts to deal adequately with the effects of violent and abusive behavior of husbands on vulnerable wives. In her brief, petitioner sets forth at length the characteristics of battered women, pointing out the increasingly widely accepted view that they are psychologically vulnerable and emotionally incapable of extracting themselves from the victim's role into which they have fallen. *See, e.g., Moran v. Ohio*, 469 U.S. 948, 950, 105 S.Ct. 350, 351, 83 L.Ed.2d 285 (1984) (mem.) (Brennan, J., dissenting); *Arcoren v. United States*, 929 F.2d 1235, 1239–40 (8th Cir.), *cert. denied,* — U.S. ——, 112 S.Ct. 312, 116 L.Ed.2d 255 (1992); *Ibn–Tamas v. United States*, 407 A.2d 626, 634 (D.C. 1979) (*Ibn–Tamas I*); Victoria M. Mather, *The Skeleton in the Closet: The Battered Woman Syndrome, Self–Defense, and Expert Testimony*, 39 Mercer L.Rev. 545, Westlaw 39 MERLR 545, at *2–5 (1988); Elizabeth M. Schneider, *Equal Rights to Trial for Women: Sex Bias in the Law of Self–Defense*, 15 Harv.C.R.–C.L.L.Rev. 623, 624–27 (1980).

Her argument here is that she was deprived by Oklahoma law of a reasonable opportunity to present that evidence because of the imminence requirement of the Oklahoma statute defining self defense.[2] Of course, her burden in federal habeas corpus is to establish that the Oklahoma law deprived her of a right which is protected by the Federal Constitution. She

attempts to do so by arguing that she was a part of a discrete class of individuals who as a group are disadvantaged by the imminence requirement of the Oklahoma self defense statute.

In summary, petitioner's argument is that the policy underlying the imminency requirement is to limit self defense to circumstances in which the defendant has no alternative to prevent the threatened harm but to use violence. She argues that the cyclical trap of the "battered woman syndrome" sets the battered woman apart from others who have the financial and other resources and support, including reasonable access to police and courts, to supplement their smaller physical size and lack of ability to defend themselves. She argues that the "battered woman" should have an opportunity to show the jury that her actions were based on a subjectively reasonable apprehension of imminent bodily harm and therefore at least excusable if not justifiable. She supports this argument with a citation to the practices of numerous jurisdictions. In some jurisdictions the battered woman syndrome may be explained to the jury at trial by expert testimony, buttressed by lay testimony to support the defendant's inclusion in that category. *See, e.g., State v. Koss*, 49 Ohio St.3d 213, 551 N.E.2d 970, 972, 974 (1990) (overturning Ohio's earlier ban on the use of expert testimony about the battered woman syndrome; citing cases from other jurisdictions accepting expert testimony on this subject); *contra Ibn–Tamas v. United States*, 455 A.2d 893, 894 (D.C.1983) (*Ibn–Tamas II*) (affirming unpublished trial court decision that "defendant failed to establish a general acceptance by the expert's colleagues of the methodology used in the expert's study of 'battered wom-

---

**2.** Okla.Stat.Ann. tit. 21, § 733 provides in pertinent part:

Homicide is ... justifiable when committed by any person in either of the following cases:
1. When resisting any attempt to murder such person, or to commit any felony upon him, or upon or in any dwelling house in which such person is; or,
2. When committed in the lawful defense of such person ... when there is a reasonable ground to apprehend a design to commit a

felony, or to do some great personal injury, and imminent danger of such design being accomplished....
*See also McKee v. State*, 372 P.2d 243, 245 (Okla.Crim.App.1962) ("Fear alone is not enough to justify one person to take the life of another." Fear of imminent danger "must have been induced by some overt act, gesture, or word spoken by the deceased at the time the homicide occurred.").

en' "). *See also Thomas v. Arn*, 728 F.2d 813 (6th Cir.1984) (Jones, J., concurring), *aff'd*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985):

> [T]he trial court's exclusion of expert testimony on the "battered wife syndrome" impugned the fundamental fairness of the trial process.... There is sufficient literature which suggests that the public and thus, juries, do not understand the scope of the problem concerning battered women.... Ascertaining a battered woman's state of mind is crucial to a determination of this and other aspects of her behavior. It may bear on the responsibility or lack of it, for her response.... The law cannot be allowed to be mired in antiquated notions about human responses when a body of knowledge is available which is capable or providing insight.

*Id.* at 815 (dictum) (citations omitted). *Cf. People v. Powell*, 102 Misc.2d 775, 424 N.Y.S.2d 626 (N.Y.Co.Ct.1980), *aff'd*, 83 A.D.2d 719, 442 N.Y.S.2d 645 (N.Y.App. Div.1981). In *Powell*, a woman petitioned for reversal of her homicide conviction based on newly discovered evidence, specifically, expert testimony describing the battered woman syndrome, its applicability to the defendant, and its implications for the state's argument at trial that defendant masochistically enjoyed the beatings her ex-husband had given her. The New York court refused the request, holding that the evidence was not presented under a novel theory of defense. The court found the battered woman syndrome to be a subset of either the defense of justification (self-defense) or the affirmative defense of extreme emotional disturbance. *Powell*, 424 N.Y.S.2d at 631. Because the jury was instructed on both of these defenses, the court held that New York's requirements for reversal based on "newly discovered evidence" were not met. *Cf. also Arcoren v. United States*, 929 F.2d 1235, 1242 (8th Cir.) (criminal case involving several violent assault charges against woman's estranged husband; expert testimony about battered woman syndrome admitted under Fed. R.Crim.P. 702 to assist the jury in its credibility determinations concerning two diametrically opposite statements given under oath by the wife), *cert. denied*, — U.S. ——, 112 S.Ct. 312, 116 L.Ed.2d 255 (1991).

Unfortunately for petitioner, she did not offer at trial evidence on the existence or characteristics of the discrete group of women suffering from "battered woman syndrome." In addition, her arguments on post conviction appeal were inconsistent as to whether the basis of her equal protection claim was that the Oklahoma self defense statute discriminated against her because she was a woman or because she was a battered woman. This distinction is important to post-conviction appeal in the state courts as well as the federal courts. If she is claiming that the statute discriminated against her as a woman, she would not be required to define the class of "women" at trial, nor would she be required to prove her inclusion in that class. She would, however, be required to show why the class of all women is disadvantaged by the statute. On the other hand, if she is claiming that the statute discriminated against her as a woman with battered woman syndrome, she *would* be required at trial to define the class of women with "battered woman syndrome," to prove her inclusion in that class, and to show why the class of those with battered woman syndrome is disadvantaged by strict application of the statute.

Petitioner's failure to introduce appropriate discrete group evidence results in a failure to establish the basis for an equal protection challenge. On the record before us, petitioner's constitutional equal protection claim, based on her alleged status as a woman with "battered woman syndrome," is not supported by evidence either offered or introduced at trial. We therefore AFFIRM the district court on this claim.

■ Petitioner also argues that the Oklahoma Court of Criminal Appeals ignored critical and even dispositive evidence to support her self defense theory on direct appeal. Her point is that ignoring such evidence rendered her right of appeal meaningless and thus violated her federal constitutional right to due process. Although the evidence petitioner argues was

ignored by the Oklahoma Court of Criminal Appeals was not mentioned in that court's opinion on direct appeal, *Lumpkin v. State,* 683 P.2d 985, 987 (Okla.Crim.App.1984), it was considered on collateral appeal. The collateral appeals panel affirmed the decision over the vigorous dissent of the presiding judge of the five-judge panel, and the dissent cited the specific evidence petitioner complains was ignored. *Lumpkin v. State,* No. PC–90–0544, Order Affirming Denial of Post–Conviction [sic] at 3–4 (Okla.Crim.App. June 26, 1990) (Parks, P.J., dissenting). The federal courts are not permitted to review "a state decision resting on an adequate foundation of state substantive law." *Wainwright v. Sykes,* 433 U.S. 72, 81, 97 S.Ct. 2497, 2503–04, 53 L.Ed.2d 594 (1977). We therefore AFFIRM the denial of habeas corpus on this second ground.

The order of the district court denying petition for writ of habeas corpus is AFFIRMED.