OPINION OF THE COURT
John M. Leventhal, J.
In American jurisprudence, an acquittal of criminal charges does not signify that the acquitee did not actually commit the crime (United States v Watts, 519 US 148, 155 [1997]; People v Horne, 97 NY2d 404, 413 [2002]). A “not guilty” verdict indicates that the government has failed to prove beyond a reasonable doubt that the defendant committed one of the elements of a crime (id.; see also People ex rel. Matthews v New York State Div. of Parole, 58 NY2d 196, 203 [1983]). Conversely, a “guilty” verdict only indicates that the government has proven beyond a reasonable doubt that the defendant committed each and every element of the crime, and not that the defendant actually committed the crime (see People v Goetz, 73 NY2d 751, 752 [1988]). The issue in this case is what is a court’s role when a claim is made in a motion to vacate a judgment that the defendant did not commit the crime, although the defendant’s conviction was constitutionally and properly obtained (freestanding claim of innocence). Is the court the proper branch of government in which to raise a claim of factual innocence? If the court is the appropriate forum, what is the legal basis for the innocence claim? What criteria should a court use in determining, postjudgment, the actual innocence of a defendant? If the court finds that a convicted person is in fact innocent, what is the appropriate remedy?
In deciding this motion to vacate the judgment, the court has considered the moving papers and all responsive papers, the trial record, the hearing testimony, the oral arguments, defendant’s document dated March 3, 2003 entitled “Defendant’s Summation” and the People’s posthearing memorandum of law.
*533 Background
On August 4, 1985 at approximately 1:00 p.m. near the corner of Fulton Street and Spencer Place, Brooklyn, New York, a man was shot. The police investigated the shooting and were told by various witnesses, including a Mr. Fleming, the name of the shooter. Mr. Fleming chose a photograph of a person who was incarcerated at the time of the shooting. Other witnesses identified other persons whom the investigation ruled out.
On February 1, 1986, one Jeffrey Campbell,[1] while in jail on a pending unrelated case, named the defendant as the shooter. Subsequently, another eyewitness identified the defendant at a photographic identification procedure and a lineup.
On February 27, 1986, the instant indictment was filed charging the defendant with murder in the second degree and related charges. Prior to the filing of the indictment, both Mr. Fleming and the defendant testified during the grand jury presentation that the defendant was not the shooter.
On March 11, 1986, the defendant was arraigned and pleaded not guilty.
On March 17, 1987, a jury trial commenced. The People presented the testimony of Mr. Campbell and another eyewitness. Both of these witnesses identified the defendant as the shooter. The defendant presented a different eyewitness who knew the defendant and testified that the defendant was not the shooter. The defendant also called an alibi witness to testify that the defendant was at a location other than the scene of the crime at the time of the shooting. Neither Mr. Fleming nor the defendant testified at trial.
On March 23, 1987, the jury convicted the defendant of manslaughter in the first degree and related charges.
On August 7, 1987, the defendant was sentenced. His sentence was to run consecutive to his Manhattan 6 years to life sentence.[2]
By order dated September 12, 2002 (NYLJ, Sept. 20, 2002, at 20, col 4), the court directed a hearing regarding the newly discovered evidence claim raised in defendant’s papers. The *534 court also directed that the hearing include possible Brady violations and a free-standing claim of innocence.[3]
At the hearing the defendant called four alleged eyewitnesses who testified that they saw the shooting and that the defendant was not the shooter. All four alleged eyewitnesses identified a person by the name of “Denzel” as the shooter. All four of the eyewitnesses have extensive criminal records. The defendant also presented an audiotape and a videotape of the recantation of Jeffrey Campbell.[4]
CPL 440,10
Except where authorized by law, the “adjudicatory power of the criminal court end[s] with the imposition of a sentence” (People v Stevens, 91 NY2d 270, 277 [1998]). Thus, the power of a court to set aside a verdict is “created and measured by the statute” (People v Schmidt, 216 NY 324, 328 [1915]; see also People v Jackson, 78 NY2d 638, 647 [1991]). A lower court has no inherent power to set aside a guilty verdict (People v Carter, 63 NY2d 530, 537-538 [1984]; People ex rel. Jerome v Court of General Sessions, 185 NY 504, 506-507 [1906]; see also People v Rao, 271 NY 98, 100-101 [1936]), but is limited to those grounds enumerated by statute and their statutory criteria (People v Reyati, 254 AD2d 199, 200 [1998]; People v Forbes, 191 Misc 2d 573, 576 [2002]; see also Jackson, 78 NY2d at 647; Schmidt, 216 NY 328; People v Salemi, 309 NY 208, 215 [1955]).[5] There exists no authority to vacate a judgment in the interest of justice or on equity grounds (People v Forbes, 191 Misc 2d at 576 [see cases cited therein]; see People v Hawkins, 99 NY2d 592, 593 [2003]).
Newly Discovered Evidence
The power to grant a new trial on the ground of newly discovered evidence is purely statutory (Salemi, 309 NY at 215; People v Pugh, 236 AD2d 810, 811 [1997]; People v Latella, 112 *535 AD2d 321, 322 [1985]). This power cannot be exercised unless all the requirements of the statute have been met (id.; People v Taylor, 246 AD2d 410, 411 [1998]; People v Balan, 107 AD2d 811, 815 [1985]). Whether the criteria have been met rests in the sound discretion of the court (id.). This discretion has been described as “unlimited” (People v Baxley, 84 NY2d 208, 212 [1994]; People v Crimmins, 38 NY2d 407, 415 [1975]).
The six Salemi (309 NY at 216) requirements for all newly discovered evidence claims are:
“1. It must be such as will probably change the result if a new trial is granted; 2. It must have been discovered since the trial; 3. It must be such as could have not been discovered before the trial by the exercise of due diligence; 4. It must be material to the issue; 5. It must not be cumulative to the former issue; and, 6. It must not be merely impeaching or contradicting the former evidence.”
The “it” refers to the newly discovered evidence. The newly discovered evidence must be evidence admissible at trial (People v Boyette, 201 AD2d 490, 491 [1994]; People v Dabbs, 154 Misc 2d 671, 674 [1991]; see also People v Fields, 66 NY2d 876, 877 [1985]).
In this case, the audiotape and videotape of Mr. Campbell’s alleged recantation and the statement by Mr. Fleming do not constitute newly discovered evidence.
The court finds that the defendant has failed to establish by a preponderance of the evidence that the uncalled eyewitnesses could not have been discovered prior to trial with due diligence.[6] In this regard, the court notes that defendant was aware that other eyewitnesses had selected other persons as the perpetrator.
*536 The motion as it relates to newly discovered evidence is denied.

Brady

The State has a duty to disclose exculpatory evidence in its possession which is material to the guilt or innocence of the defendant (Brady v Maryland, 373 US 83 [1963]; People v Vilardi, 76 NY2d 67, 73 [1990]). A defendant making a postconviction Brady claim must establish that the material was not known to the defense (see People v Fein, 18 NY2d 162, 169-170 [1966]; People v Rodriguez, 223 AD2d 605, 606 [1996]; People v Ausserau, 77 AD2d 152, 156 [1980]). Also, movant must show that the material was never disclosed to him/her (People v Licitra, 236 AD2d 559 [1997]).
The People have no obligation to supply a defendant with material that the defendant knew or should have known existed and knew or should have known was exculpatory (People v Doshi, 93 NY2d 499, 506 [1999]; Fein, 18 NY2d 162 [1966]).
Where a defendant has made a specific request for a particular item of evidence, a court judges the materiality of the evidence by whether there is a reasonable possibility that the failure to disclose the item affected the verdict (Brady, 373 US at 88; Vilardi, 76 NY2d at 73). If a defendant makes a general or nonspecific request for exculpatory evidence, the failure to disclose such material is a due process violation only if there is a reasonable probability that the outcome of the trial was affected (United States v Agurs, 427 US 97, 112 [1976]; Vilardi, 76 NY2d at 73; People v Smith, 63 NY2d 41, 67 [1984]; People v Nedrick, 166 AD2d 725, 727 [1990]).
Although several of the witnesses testified that they informed the police of the innocence of the defendant, the court finds such testimony unworthy of belief. The testimony is contradicted by documentary evidence and the testimony of the investigating police officers.[7]
The court finds that the defendant has failed to prove by a preponderance of the credible evidence that the State possessed exculpatory evidence that was not turned over to the defense.
The defendant has also failed to show that he did not know of the exculpatory information. Some of the witnesses stated that prior to trial they informed the defendant or his brother {see n 6 herein).
*537 The motion as it relates to the Brady issue is denied.
The question now arises whether there is a provision in CPL article 440 that authorizes the court to vacate the judgment based on a free-standing claim of innocence. The issue distills to whether the conviction or incarceration of a factually innocent person is a violation of the New York State Constitution. If the conviction or incarceration does violate the State Constitution then CPL 440.10 (1) (h) provides a basis for vacating the judgment.
Separation of Powers
Both the United States Constitution (art II, § 2 [1]) and the New York State Constitution (art iy § 4) accord the chief executive officer of government the right to grant clemency or a pardon to a convicted person. As pointed out by Chief Justice Rehnquist in Herrera v Collins (506 US 390, 411-417 [1993]), executive clemency has been the traditional “fail safe” (at 415) for postjudgment claims that a defendant is innocent. The Chief Justice, writing the lead opinion in Herrera, held that as long as a state provides for a mechanism through the executive branch of government for entertaining a claim of innocence, no federal procedural due process violation occurs by the incarceration of or the execution of a factually innocent individual.
Dicta in three old New York Court of Appeals decisions support Chief Justice Rehnquist’s rationale (People ex rel. Prisament v Brophy, 287 NY 132, 139 [1941]; People ex rel. Hirschberg v Orange County, 271 NY 151, 156 [1936]; People v Broncado, 188 NY 150, 155-156 [1907]). As stated in dicta in People ex rel. Prisament (287 NY at 139):
“Under an ideal system of administration of justice a person convicted of a crime should, perhaps, be granted an opportunity to present to a court proof of his innocence whenever such proof becomes available and, then, to ask the court to vacate the erroneous judgment. In practice, inflexible rules of procedure may deny to a person wrongfully convicted any further access to the court. Then his only means of redress is appeal to the executive.”[8]
The dicta in the above-noted cases would bar a court from vacating a judgment based on factual innocence.
The rationale of two New York Court of Appeals decisions contradict Chief Justice Rehnquist’s position and the dicta in *538 the above-noted cases (People ex rel. Sloane v Lawes, 255 NY 112, 118-119 [1930]; Matter of Kaufmann, 245 NY 423, 430 [1927]). In Matter of Kaufmann (245 NY at 430), the Court stated
“Rare instances may arise, however, where one convicted, disbarred and pardoned may be able to satisfy the court that his guilt has not been proved or even to go farther and demonstrate his innocence. In these exceptional conditions, the administration of justice would be subject to reproach if an implacable law of remedies were to close the door forever upon the hope of vindication.”
It must be remembered that under the New York State Constitution a pardon based on actual innocence does not constitute a nullification of the conviction, and the conviction remains intact (Lyons v Goldstein, 290 NY 19, 27 [1943]; People ex rel. Prisament, 287 NY at 138-139; Roberts v State of New York, 160 NY 217, 221 [1899]; see also Annotation, 97 ALR5th 293). This is true because the executive branch of government cannot effect a judgment rendered by the judicial branch of government (id.).
The court is aware that Executive Law § 19 provides that where a convicted person has been pardoned based upon innocence and a motion to vacate the judgment based upon newly discovered evidence would be untimely, then such individual may apply to the court to vacate the conviction and the court must grant the motion. This statute is antiquated and inapplicable under current law, as there is no current legal time bar to a motion to vacate a judgment based upon newly discovered evidence.[9] The statute recognizes that it is the court that vacates the conviction, and that the court has a function in such a situation, albeit ministerial.
The inadequacy of the pardon as a remedy for wrongfully convicted individuals has been pointed out by the Court of Appeals (Lyons, 290 NY at 27) and legal scholars (Pietrkowski, The Diffusion of Due Process in Capital Cases of Actual Innocence, after Herrera, 70 Chi-Kent L Rev 1391, 1426-1427; Reinmuth, When Actual Innocence is Irrelevant: Federal Habeas Relief for State Prisoners after Herrera v. Collins, 69 Wash L Rev 279, 298; Bandes, Simple Murder: A Comment on the Legality of Executing the Innocent, 44 Buff L Rev 501, 520-522; Klasmeier, Towards a New Understanding of Capital Clemency and *539 Procedural Due Process, 75 BU L Rev 1507). The criticisms center upon the fact that a pardon is dispensed based upon the mercy of the executive. There is nothing compelling the governor to grant a pardon to an actually innocent defendant. Often pardons are denied based on arbitrary criteria, political considerations, lack of resources to investigate the claim, fulfillment of campaign promises and the character of the innocent individual (id.). One study shows that pardons or clemency is not always granted to factually innocent persons (69 Wash L Rev at 298).
Not all these criticisms are valid in New York. An examination of the Guidelines for Review of Executive Clemency Applications (reprinted following McKinney’s Cons Laws of NY, Book 18, Executive Law § 15) shows the following criteria:
“Pardon is most commonly available:
“(1) to permit a judgment of conviction to be set aside where there is overwhelming and convincing proof of innocence not available at the time of conviction.”
Thus, there are criteria in New York for executive pardon based on factual innocence.
Also, the court notes that the Kangs County District Attorney has established a section of the office to examine claims of actual innocence. Indeed, the court is aware of several cases in this county where the prosecution has requested the court to vacate a conviction based upon what was later determined to be an unjustified conviction of a defendant. Although the District Attorney is an executive officer, the motion to vacate is made to the court and not to the governor for a pardon.
However, this court has been unable to locate any case that discusses whether under the New York State Constitution it is unconstitutional to convict and to incarcerate a guiltless person. In this regard it is a judicial function to determine whether the New York State Constitution bars the conviction or the jailing of an actually innocent individual. It is a judicial function to vacate a court judgment which violates the Constitution (In re Opinion of Justices, 234 Mass 612, 127 NE 635, 639 [1920]; State v Stern, 210 Minn 107, 297 NW 321, 323 [1941]).
The court must now consider whether the New York State Constitution bars the conviction and continued incarceration of a guiltless person.
Federal Constitution and Other States
The United States Supreme Court has refused to hold that it is improper for a state to incarcerate an innocent person, *540 provided that the state provides for a possibility of a pardon based upon the person being innocent (Herrera, 506 US at 399-400). In Herrera (at 400) the lead opinion held that “claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding.” Under the federal system, a state prisoner’s claim of innocence by itself is not a sufficient ground for granting of habeas corpus relief, but permits the federal courts to overlook procedural grounds barring other federal constitutional claims (Schlup v Delo, 513 US 298 [1995]). Virtually every United States Circuit Court of Appeals has held that the refusal by the United States Supreme Court to hold that a claim of actual innocence is grounds for relief means that there exists no constitutional prohibition against leaving an innocent person in jail if the state provides for a pardon based upon innocence (Royal v Taylor, 188 F3d 239, 243 [1999]; Sellers v Ward, 135 F3d 1333, 1338-1339 [1998]; Lucas v Johnson, 132 F3d 1069, 1075-1077 [1998]; Meadows v Delo, 99 F3d 280, 283 [1996]; Milone v Camp, 22 F3d 693, 705-706 [1994]).[10]
New York provides for the pardon of an actually innocent defendant {see Executive Law § 19; see also People v Chichester, 162 Misc 2d 658, 659 [1994]). Thus, the incarceration of an actual innocent person in New York would not violate the Federal Constitution.
Many states have similarly held that a free-standing claim of actual innocence is insufficient to provide for postconviction relief (State v Byrd, 145 Ohio App 3d 318, 323, 710 NE2d 1043, 1053-1054 [2001]; Reedy v Wright, 2002 WL 598434, 2002 Va Cir LEXIS 64 [Va Cir Ct, Apr. 8, 2002]; State v Ratliff, 71 SW3d 291, 296-298 [Tenn 2001]; State v Placzkiewicz, 307 Mont 189, 192, 36 P3d 934, 936 [2001]; State v Norsworthy, 71 SW3d 610 [Mo 2002]; Pellegrini v State, 117 Nev 860, 34 P3d 519, 537 [2001]; Heffernan v State, 2002 WL 1303388, 2002 Ark LEXIS 363 [Ark Cir Ct, June 13, 2002]). These jurisdictions hold that a free-standing showing of actual innocence will overcome procedural bars to claims other than actual innocence.
Several states hold that the conviction or incarceration of an actually innocent defendant is either unconstitutional or is, in and of itself, sufficient to vacate a conviction (People v Washing *541 ton, 171 Ill 2d 475, 665 NE2d 1330 [1996]; Miller v Commissioner of Correction, 242 Conn 745, 700 A2d 1108 [1997]; In re Clark, 5 Cal 4th 750, 855 P2d 729 [1993]; Ex parte Elizondo, 947 SW2d 202 [Tex 1996]; State ex rel. Amrine v Roper, 102 SW3d 541 [Mo 2003]).[11]
New York State Constitution
The New York State Constitution grants an accused greater rights than those provided in the Federal Constitution (see People v Harris, 77 NY2d 434 [1991]; People v Class, 67 NY2d 431, 433 [1986]; see generally People v P.J. Video, 68 NY2d 296 [1986]). These constitutional rights were granted to an accused in order to protect an innocent person from improper conviction (see People v Malinski, 292 NY 360, 383 [1944] [Lehman, J., dissenting]). New York has accorded an accused broader rights to counsel than the Federal Constitution in order to insure that “the innocent go free” (People v Claudio, 83 NY2d 76, 79 [1993]). The New York State Constitution provides for indictment by a grand jury in order to protect an innocent suspect from false accusation (People v Infante, 124 AD2d 86, 90 [1987]). The constitutional right to be present at trial is for the “protection of the innocent” (People v Mullen, 44 NY2d 1, 4 [1978]). The constitutional bar against the introduction of suggestive procedure is to diminish “the risk of convicting the innocent through tainted identification procedures” (People v Gee, 99 NY2d 158, 162 [2002]).
Our Court of Appeals has recognized that the function of a criminal prosecution and the interest of society is to convict the guilty and to acquit the innocent (People v Roselle, 84 NY2d 350, 356 [1994]).
It is clear from the above that one of the goals of the New York Constitution is to insure that the guiltless are acquitted. Not only are procedures to achieve a goal part of the Constitution, but those goals are considered by this court as essential parts of the Constitution. Thus, the ends of acquitting the non-guilty is an essential part of the Constitution.
Article I, § 6 of the New York Constitution prohibits the deprivation of liberty without due process of law. The concept of due process requires that the government grant “elemental fairness” to an accused (Vilardi, 76 NY2d at 76). Further, a person who has not committed any crime has a liberty interest *542 in remaining free from punishment. This court holds that the conviction or incarceration of a guiltless person violates elemental fairness, deprives that person of freedom of movement and freedom from punishment and thus runs afoul of the Due Process Clause of the State Constitution.
Article I, § 5 of the New York Constitution prohibits the imposition of cruel and unusual punishment. This prohibits punishing a person disproportionately to the crime committed (People v Broadie, 37 NY2d 100, 111 [1975]). The court.finds that punishing an actually innocent person is disproportionate to the crime (or lack of crime) committed and violates the cruel and inhuman treatment clause.
Whatever the rubric used, the court finds that the conviction of and/or punishment imposed upon an innocent person violates the New York State Constitution.
CPL 440.10 (1) (h) provides for the vacating of a judgment which was obtained in violation of an accused’s constitutional rights.
Standard for Determining Actual Innocence
The function of a standard of proof is to instruct the fact-finder “concerning the degree of confidence our society thinks . . . should [be had] in the correctness of [the] factual conclusion [ ]” (People v Geraci, 85 NY2d 359, 367 [1995]; Matter of Storar, 52 NY2d 363, 379 [1981]; see also Addington v Texas, 441 US 418, 425 [1979]; Schlup, 513 US at 325). In determining the proper standard of proof in any situation, the court must weigh the public and private interests affected and evaluate how the risk of error should be distributed (Matter of Lee TT. v Dowling, 87 NY2d 699, 712 [1996]; see also Matter of Miller v DeBuono, 90 NY2d 783, 792 [1997]).
The courts and individual judges or justices that have discussed the appropriate burden of proof for a free-standing claim of innocence have come to divergent opinions (see Herrera, 506 US 390 [1993]; Washington, 171 Ill 2d at 489, 665 NE2d at 1337; Miller, 242 Conn 745, 700 A2d 1108; In re Clark, 5 Cal 4th at 798, 855 P2d at 761; Ex parte Franklin, 72 SW3d 671, 678 [Tex 2002]; Roper, 102 SW3d at 547 [Mo]). Similarly, legal scholars who have discussed the issue have reached different conclusions (70 Chi-Kent L Rev at 1438; 69 Wash L Rev at 301). Typical of the divergent opinions are the differing opinions in Miller (242 Conn 745, 700 A2d 1108). The majority opinion in Miller sets the standard for a claim of innocence as the *543 convicted defendant must prove by clear and convincing evidence that he or she is innocent and considering all the evidence and inferences drawn therefrom no reasonable factfinder would find the petitioner guilty (242 Conn at 791-792, 700 A2d at 1130-1131). Justice Berdon, concurring and dissenting, would set the standard as a showing that the petitioner is “probably innocent” (242 Conn at 813, 817, 700 A2d at 1140, 1142). Justice McDonald, in dissent, would require a showing that “unerringly demonstrates the defendant was innocent” (242 Conn at 819, 826, 700 A2d at 1143, 1146).
In Schlup (513 US at 316), the United States Supreme Court indicated that if it were to adopt a constitutional standard for a free-standing claim of innocence, it would require unquestionable evidence that the petitioner was innocent.
This court must balance the various interests and determine the proper standard of proof under the New York State Constitution. The government has an interest in the finality of a conviction once it has accorded an accused all of the constitutional rights required by law (People v Machado, 90 NY2d 187, 192 [1997]; People v Jackson, 78 NY2d 638, 646-647 [1991]; People v Seaberg, 74 NY2d 1, 10 [1989]). After a conviction has been constitutionally obtained, there is a presumption that the convicted person is in fact guilty (People v Ekinici, 191 Misc 2d 510, 518 [2002], citing Schlup at 326 n 42). Nonetheless, society does not have any interest in the conviction or punishment of an innocent person.
A person who has not committed any crime certainly has a strong interest in remaining at or returning to liberty.
Balancing the public and private interests involved and considering that the defendant has had the opportunity to prove his innocence, the court finds that a movant making a freestanding claim of innocence must establish by clear and convincing evidence (considering the trial and hearing evidence) that no reasonable juror could convict the defendant of the crimes for which the petitioner was found guilty.
In this respect, a court conducting a hearing on a claim of innocence should admit into evidence any reliable evidence whether in admissible form or not (see Bousley, 523 US at 623-624; Schlup, 513 US at 327-328; Herrera, 506 US at 443 [Blackmun, J., dissenting, joined by Stevens and Souter, JJ.]). This is so because the focus is on factual innocence and not on whether the government can prove the defendant’s guilt beyond a reasonable doubt.
*544 Remedy
All courts that have ruled that a petitioner may make a freestanding claim of innocence have held that if a court upholds such a claim a new trial should be ordered (see cases cited above). This court disagrees. If a court has determined by clear and convincing evidence that no reasonable juror could convict the defendant of the charged crime, what purpose does a new trial serve? There is no reasonable juror who could convict. Thus, any juror who does convict is unreasonable. There appears to be no reason to order a new trial.
Further, if the jury convicts such a person, this second conviction would be equally unconstitutional as there exists clear and convincing evidence that no reasonable juror could convict the defendant.
Thus, if a court sustains a free-standing claim of innocence, the court should vacate the conviction and dismiss the accusatory instrument.
Application to this Case
In determining whether this defendant has met his burden of proof the court has considered the following:
1. The credibility of the defendant’s witnesses is questionable in light of their extensive criminal history. However, this does not make the witnesses as a matter of law incredible (People v Adams, 302 AD2d 601, 601 [2003] [and cases cited therein]).
2. This court has already found that parts of the defendant’s witnesses’ testimony is incredible in one aspect, and thus there is justification for rejecting all of their testimony (see People v Johnson, 225 AD2d 464, 464 [1996]).
3. The 16-year delay by the witnesses in claiming that the defendant is innocent affects their credibility (see People v Vasquez, 204 AD2d 114, 114-115 [1994]).
4. All the descriptions given to the police at the time of the incident do not match that of the defendant’s appearance at the time of the crime.
5. The stories of the witnesses regarding the crime are consistent with each other and with the defendant’s trial witnesses.
6. The time line testified to by the defendant’s hearing witnesses is inconsistent with documentary evidence and the testimony of the police officers called at the hearing. Some of *545 the factual allegations made by the defendant’s hearing witnesses were contradicted by the police testimony.[12]
7. There is evidence that the defendant or a person on his behalf (his brother) threatened and bribed certain witnesses. This is evidence of consciousness of guilt (see People v Bennett, 79 NY2d 464, 469 [1992]).
8. There was nothing about the demeanor of the defendant’s hearing witnesses that would cause the court to disbelieve their testimony (although some of the previous reasons would be grounds).
Given all the above, the court finds that the defendant has failed to prove by clear and convincing evidence that no reasonable juror could convict the defendant. For the purpose of completeness and for the purpose of review should an appellate court determine that the proper applicable standard would be different, this court finds that the defendant has shown that he is probably innocent (more likely than not approximating 55%).[13]
The motion to vacate the conviction is denied.

. Jeffrey Campbell had been originally arrested when a police officer observed him fleeing the scene. He was released based on evidence that he was not the shooter.

. The defendant is currently serving both sentences.

. Although the defendant’s original motion did not specifically address these claims, a fair reading of the papers did. The court ordered that these grounds be added to the hearing in order to give all parties an opportunity to address the legal and factual issues.

. Mr. Campbell is no longer alive.

. In some cases the Court of Appeals has stated that a lower court has the “inherent” power to set aside a judgment obtained by “fraud, misrepresentation, violation of defendant’s constitutional rights or other similar trial errors” (People v Farrell, 85 NY2d 60, 68 [1995]). These grounds have all been incorporated in CPL article 440, and thus the statute controls.

. For example, the witness Tildón Edwards stated that he had appeared before the grand jury as a defense witness and was never called. Edwards also testified that he came to court with the defendant’s brother. It is clear that defense counsel with a little diligence could have spoken to Mr. Edwards and discovered the names of the other witnesses who were present. Mr. Edwards knew all the names of the witnesses who were presented at the hearing. The witness Bertram Carter said he told the defendant while in the Brooklyn House of Detention that he knew that the defendant was not the shooter. The witness Derrell Gregory testified that he informed the defendant’s brother about his potential testimony that the defendant was not the shooter before the commencement of the trial. The testimony of the defendant’s investigator also shows that with due diligence the witnesses could have been discovered. If the investigator found these witnesses 16 years after trial, there appears to be no reason why these witnesses could not have been located at the time of the trial.

. The court finds the detectives’ testimony in this regard to be credible.

. Similar sentiments were expressed by Justice Scalia (joined by Justice Thomas) in his dissent in Bousley v United States (523 US 614, 635 [1998]).

. New York at one time did in fact place a two-year time limitation on such motions.

. This is just a sampling of the decisions in the federal court. The court is aware of the case of Carriger v Stewart (132 F3d 463 [1997]) which appears to hold to the contrary.

. This case was decided after this court’s original decision in this case.

. Since the determination in this case centers on what a reasonable juror could find, it is not necessary for the court to make a final credibility determination.

. The reason the court has put a percentage in this decision is for the purpose that should an appellate court adopt a standard between “probably innocent” and “clear and convincing,” the appellate court can apply that standard to this case without remanding the matter.