People v Kirkland (2003 NY Slip Op 51507(U))

[*1]

People v Kirkland

2003 NY Slip Op 51507(U)

Decided on December 8, 2003

Supreme Court, Kings County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on December 8, 2003

Supreme Court, Kings County
 
 People of the State of New York,
against
Kenneth Kirkland, Defendant.
Indictment No. 5211/84

Martin Schneier, J.
The defendant, pro se, moves to vacate the judgment on the ground that his right to effective assistance of counsel was violated. Specifically, he alleges that his counsel failed to investigate certain potential witnesses and failed to request a missing witness charge.
In deciding this motion, the court has considered the moving papers and exhibits, the People's affirmation in opposition, the defendant's reply dated May 30, 2003, the prosecution's letter dated June 27, 2003 with annexed affirmation from former defense counsel,[FN1] the court file and the trial transcript.
Background
On August 19, 1984, a drug dealer (victim or deceased) was shot in the back of the head and killed while inside 83 Woodruff Ave Brooklyn, N.Y.. On August 21, 1984, the defendant voluntarily went to the police station and told the police that he was inside an apartment with the deceased and another individual (witness 1). The victim wished to leave the apartment in order to go to the bathroom.[FN2] Before exiting the apartment, the victim looked through a peephole and stated that "George" was outside. The defendant urged the deceased not to go out of the apartment but the victim did not comply and left. Two seconds later, the defendant heard a shot, opened the door and observed the deceased lying on the floor.
After further investigation, the police arrested the defendant for the homicide.
On September 7, 1984, an indictment charging the defendant with murder in the second degree was filed. On September 14, 1984, the defendant was arraigned and pleaded not guilty.
On October 1, 1985, a Huntley hearing was conducted and suppression of the defendant's statement was denied. Thereafter, jury selection commenced.
[*2]
On October 2, 1985, the People turned over to the defense counsel the name and an audiotape of a statement made by a newly discovered witness (witness 2). The court directed that defense counsel not reveal the name of the witness to the defendant out of fear for the safety of the witness. The witness had been in the same portion of the jail as the defendant and had been threatened by companions of the defendant.
At trial, witness 1 testified that he, the defendant and the deceased were in a certain apartment selling drugs. At one point, the defendant left the apartment to get some drugs. When the defendant returned he had with him a bag of drugs and a .38 caliber revolver which he placed on a table. A few hours later, the deceased wanted to go to the bathroom and took the gun off of the table. The defendant told the victim to give him the gun, and the victim complied. As the deceased was leaving the apartment, witness 1 heard a gun shot and saw the victim fall to the ground. Witness 1 turned around and saw the defendant with a gun in his hand. The defendant then stated that it was an accident.
Witness 1 then exited the apartment and started to leave the building. He observed the defendant walk up a stairway. Witness 1 then exited the building. Shortly thereafter, the defendant approached witness 1 and told him that he should not say anything to anyone, and if requested he should say that "George" shot the deceased.
Witness 2 testified that on August 19, 1984, he was in the hallway of 83 Woodruff Ave., Brooklyn, N.Y. smoking marijuana and listening to music. He observed the defendant coming down the stairs with a bag and a .38 caliber revolver. The defendant told witness 2 and his companion that they should leave the building because something was going to happen. The defendant then entered an apartment. A little while later, he heard the door to the apartment open and observed the defendant holding a gun. Witness 2 turned to his companion and told him to watch what was going to happen while he turned his back to the apartment. Witness 2 then heard a shot, turned around and saw the defendant holding a .38 caliber revolver. Witness 2 observed a person, whose name he did not know, lying on the floor. Witness 2 and his companion then left the building.
It was established at trial that a .38 caliber bullet was found in the head of the deceased.
The defendant testified substantially consistent with his statement to the police. He also stated that a few days before the murder, "George" had been fired by the deceased from his position as security person for the drug spot.
After seven hours of deliberations and without any jury requests, the jury convicted the defendant of murder in the second degree.
On November 1, 1985, the court sentenced the defendant to a term of imprisonment having a minimum of 18 years and a maximum of Life.[FN3]
The defendant appealed his conviction, but the judgment was affirmed (133 AD2d 126). Leave to appeal to the Court of Appeals was denied (70 NY2d 875).
The defendant now alleges that counsel was ineffective for failing to investigate and interview the companion of witness 2 and failing to investigate and interview two other persons who would (according to the defendant) testify that the defendant exited the building with witness 1, thus [*3]contradicting the testimony of witness 1 that the defendant went up the stairs after the shooting.[FN4]
Laches
The prosecution urges the court to dismiss the motion to vacate the judgment on the ground that this motion was made 19 years after judgment and the People have been prejudiced by the delay. The People claim they cannot locate their file and that the former defense counsel has told them that he has no memory of the case. The former defense counsel has submitted an affirmation stating he no longer has his legal file and is retired. The People allege that given the amount of time between the motion and the judgment it is virtually impossible to defend against the factual claims made by the defendant.
It should be pointed out that the facts alleged in this motion were equally known to the defendant at the time the judgment was entered as it is today.
In his reply, the defendant alleges that he had no recollection of witness 2 ever testifying to a companion being present and that he was a teenager at the time of the trial and not knowledgeable about these matters. The information alleged in the motion was first pointed out by his mother about a year ago.
Laches is an equitable bar to certain proceedings (Saratoga County Chamber of Commerce Inc. v Pataki, 100 NY2d 801; In Re Barabash Estate, 31 NY2d 76, 81). In order to establish the bar of laches the party claiming laches must establish a lengthy delay and prejudice (id.). Laches has been applied to equitable actions or relief and to declaratory judgments (Saratoga, 100 NY2d 801). Laches does not apply to actions at law (Roth v Black Star Publishing Co., Inc., 302 AD2d 442, 443 - see cases cited therein). A motion to vacate a judgment made pursuant to CPL 440 is an action at law (People v Reed, 273 AD2d 882, 883). Therefore, laches does not apply to a motion to vacate a judgment in a criminal case (id.).
This court is bound by the holding of the Appellate Division, Fourth Department, in Reed (Mountain View Coach v Storms, 102 AD2d 663, 664-665).[FN5]
[*4]
Even if this court is not bound by Reed decision, the court would hold that as a matter of law, laches does not apply to motions to vacate a judgment.
Traditionally equity is inapplicable to criminal matters (People v Romero, 91 NY2d 750, 755-756). As such, a court is barred from granting a motion to vacate a criminal judgment on equitable grounds (People v Agero, 234 AD2d 94, 95; People v Cole, — Misc 2d —, 765 NYS2d 477, 480 People v Forbes, 191 Misc 2d 573, 576). If a court cannot grant a motion to vacate a criminal judgment on equitable grounds, it should be equally true that a motion to vacate a criminal judgment should not be denied on equitable grounds.
Further, the Court of Appeals has stated that a motion to vacate a judgment can be made at "any time" (Peple v Corso, 40 NY2d 578, 580). This is consistent with the legislative history of motions to vacate a criminal judgment. At one time in New York, a motion to vacate a judgment or a writ of coram nobis was required to be made within two years of the judgment (Cole, 765 NYS2d at 483 n9). The abolition of any time limitation indicates that the legislature did not want to restrict the time of making a motion to vacate.
The court rejects the prosecution's laches argument. To the degree that People v Bell (179 Misc 2d 410) is to the contrary and for the reasons stated above, the court refuses to adopt its reasoning.
This is not to say that the delay in making a motion to vacate a judgment cannot be considered by the court. In People v Nixon (21 NY2d 338, 352), the Court stated:

"Quite important too, as revelatory of the seriousness of defendant's present claims, is that defendant waited over a decade before asserting them. In stale cases, defendants have all to gain by reopening old convictions, retrial being so often an impossibility. These are factors to consider in determining how valid the assertions are; albeit, if they are made out, justice requires that they be explored in a hearing (cf. People v. Chait, 7 A D 2d 399, 401, affd. 6 N Y 2d 855)."[FN6]
A delay in making a claim can be considered in evaluating the seriousness and validity of a claim and may undermine the legitimacy of the claim (People v Melio, 304 AD2d 247, 252; People v Hanley, 255 AD2d 837, 838).
The court also holds that a lengthy delay in making a motion to vacate a criminal judgment can be considered when the court determines whether to exercise its discretion in applying permissive procedural bars under CPL 440.10 and CPL 440.30.
Procedural Bars
CPL 440.30 (4) (b) permits a court to deny a motion to vacate a judgment without a hearing if the moving papers do not contain sworn allegations as to all essential facts (People v Lake, 213 AD2d 494, 495-496; People v Lawson, 191 AD2d 514, 515; People v Gonzalez, 158 AD2d 615; see also People v Satterfield, 66 NY2d 796, 799; People v Session, 34 NY2d 254, 256). The affidavit must be from a person having actual or personal knowledge of the facts at issue (People v Pan, 245 AD2d 149, 150; People v Taylor, 211 AD2d 603).
[*5]
In this case, the defendant has failed to submit an affidavit or affirmation from a person who has personal knowledge about the investigation conducted by the defense counsel. There is no affidavit from the defendant's 18-b investigator as to the extent of his investigation and there are no affidavits from any of the witnesses stating that they were not interviewed by a member of the defense team.
The court exercises its discretion to deny the motion on this basis. The motion as it relates to the failure to investigate is denied.
In addition, when a claim is made that defense counsel failed to investigate or discover exculpatory evidence, the movant, in order to show prejudice, must establish the content of the evidence that would have been discovered and that the evidence if it had been presented to the trial jury, would have likely changed the outcome (Hill v Lockhart, 474 US 52, 59; People v McDonald, — NY2d—, NYLJ Nov 25, 2003, at 28 col 3, 5). Further, the moving papers must contain an affidavit from the witness or witnesses, as would have been discovered by proper investigation, setting forth the substance of the witness' or witnesses' testimony (People v Ford, 46 NY2d 1021, 1023; People v Session, 34 NY2d 254, 256; People v St. John, 163 AD2d 687, 688).
The defendant has failed to supply affidavits setting forth any potential testimony from any possible witness that would have been discovered had there been an investigation as claimed by the defendant. The defendant has not shown that any information that would have been discovered would have effected the outcome of the trial or effected the fairness of the proceeding.
The court exercises its discretion and denies the motion on this basis as well.
CPL 440.30 (4)(a) permits a court to deny a motion to vacate the judgment if the moving papers fail to allege any legal basis for the motion (People v Baxley, 84 NY2d 208, 214; People v Nash, 273 AD2d 696, 697; People v Herrara, 197 AD2d 706, 706-707).
The defendant claims that the defense counsel failed to request a missing witness charge against the People for their failure to call the companion of witness 2. Witness 2 testified that the companion was out of the state and that he had no knowledge of the whereabouts of this person.
Among the numerous requirements that a person requesting a missing witness charge must establish in order to be entitled to such a jury instruction is that the alleged missing witness is under the control of the opposing party (People v Savinon, 100 NY2d 192, 200-201; People v Vasquez, 76 NY2d 722, 724; People v Gonzalez, 68 NY2d 424, 429). Control means a relationship between the party rather than physical availability (id.).
The defendant has failed to show that the companion of witness 2 had any kind of relationship, either business, filial or social with the government. As such, there was no legal basis for defense counsel to make a request for a missing witness charge.
Further, if a party establishes that a witness is unavailable, then the opposing party is not entitled to a missing witness charge (id.). In this case the whereabouts of the companion was unknown. The People established "unavailability."
The motion to vacate the judgment on the basis that defense counsel was ineffective for failing to request a missing witness charge is denied.
To the degree that the court has failed to address each and every claim made by the defendant, the motion as to those unaddressed claims is denied for the same procedural bars as noted [*6]above.[FN7]
The motion is denied in its entirety.
This constitutes the decision and order of the court.
The defendant is hereby advised of his right to apply to the Appellate Division, Second Department, 45 Monroe Place, Brooklyn, N.Y. 11201 for a certificate granting leave to appeal from this determination. This application must be made within 30 days of service of this decision. Upon proof of financial inability to retain counsel and to pay the costs and expenses of the appeal, the defendant may apply to the Appellate Division for the assignment of counsel and for leave to prosecute the appeal as a poor person and to dispense with printing. Application for poor person relief will be entertained only if and when permission to appeal or a certificate granting leave to appeal is granted (22 NYCRR 671.5).
E N T E R ,
J. S. C.
Decision Date: December 08, 2003
Footnotes

Footnote 1: The affirmation does not contain all the alleged facts contained in the People's affirmation in opposition. Strikingly missing from the affirmation is a statement by the former defense counsel that he has no memory of his actions regarding this defendant.

Footnote 2: There was no bathroom in the abandoned apartment.

Footnote 3: Although the minimum period of incarceration has expired, the defendant remains incarcerated.

Footnote 4: Contrary to the People's position, the defense counsel knew about Witness 2's companion at least by October 2, 1985 and could have searched for him during the trial. The facts regarding witness 2's companion were not a total surprise to defense counsel. Indeed, as pointed out by the People the court had granted the defendant's request for assignment of an 18-b investigator who could have investigated the companion.

Footnote 5: The People cite an Appellate Division, First Department, decision for the proposition that the court can deny a coram nobis petition on the basis of laches. The case cited by the prosecution is People v Lee, which the People claim has a citation of 218 AD2d 928. The Lee case that is reported at that citation is a table case that is among many other decision under a heading coram nobis denied. There is no written decision or any indication in the officially reported volumes that the denial is based on laches. The court has also examined a Lee case cited in Mc Kinney's Consolidated Laws of New York Annotated, Book 11A, CPL, 2003 Cumulative Supplement at pp. 168-169 immediately prior to the miscellaneous case (People v Bell, 179 Misc 2d 410) cited by the People. The citation of that case is 155 AD2d 556. That case does not support the People's claim that laches applies to CPL 440.

Footnote 6: The phrase "albeit, if they are made out, justice requires that they be explored in a hearing" also supports the proposition that laches does not apply to motions to vacate a criminal judgment.

Footnote 7: It is noted that police reports are not sworn affidavits. Also, it is important to note that the police reports submitted by the defendant have several portions darkened out. The defendant has written over or next to the blackened portions words that he believes belongs in the blackened out portions. There is no affidavit or proof that the words written by the defendant are in fact the words contained in the blackened out portions. In any event police reports are not substitutes for sworn affidavits of witnesses.