**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

Opinion Number: 2010-NMSC-020

Filing Date: April 14, 2010

Docket No. 31,325

JERRY ALVIN KERSEY,

  Petitioner,

v.

TIMOTHY HATCH, Warden,

  Respondent.

**ORIGINAL PROCEEDING ON CERTIORARI**
Freddie Joseph Romero, District Judge

Hugh W. Dangler, Chief Public Defender
John L. Walker, Assistant Public Defender
Santa Fe, NM

for Petitioner

Gary K. King, Attorney General
Anita Carlson, Assistant Attorney General
Santa Fe, NM

for Respondent

## OPINION

**MAES, Justice.**

**{1}** The dispositive issue in this appeal is whether *State v. Frazier*, 2007-NMSC-032, ¶ 1, 142 N.M. 120, 164 P.3d 1, which held that "the predicate felony is always subsumed into a felony murder conviction, and no defendant can be convicted of both," applies retroactively to habeas corpus proceedings. Pursuant to the principles announced by the United States Supreme Court in *Teague v. Lane*, 489 U.S. 288 (1989), we conclude that *Frazier* announced a new rule of law, which is procedural in nature and, therefore, not

1

subject to retroactive application. Accordingly, we affirm the trial court's dismissal of the writ of habeas corpus filed by Jerry Alvin Kersey (Petitioner).

## I.     BACKGROUND

**{2}**     The facts of this case are fully articulated in *State v. Kersey*, 120 N.M. 517, 518-20, 903 P.2d 828, 829-31 (1995) and, therefore, will be summarized only briefly in this opinion. On September 26, 1991, Petitioner went to Roswell High School where he impersonated a police detective and asked to speak to a student, Steven Farley (Victim), regarding a fight that had occurred the previous night. *Id.* at 519, 903 P.2d at 830. After informing school officials that he wanted to question Victim at the police station, Petitioner escorted Victim outside, frisked him, handcuffed him, and put him in the back seat of a station wagon. *Id.*

**{3}**     Petitioner and his half-brother, Michael Clark, transported Victim to the Cedar Lake Lounge where they killed Victim by strangling him with an electrical cord and stabbing him eleven times with an ice pick. *Id.* Thereafter, Petitioner called Victim's mother and demanded a ransom of $50,000 for the return of her son. Petitioner subsequently turned himself in to local police and confessed his involvement in Victim's murder.[1] *Id.* at 519-20, 903 P.2d at 830-31.

**{4}**     Petitioner was charged with first-degree murder contrary to NMSA 1978, Section 30-2-1(A)(1) or (2) (1980, prior to 1994 amendment), kidnapping contrary to NMSA 1978, Section 30-4-1 (1973, prior to 1995 amendment), conspiracy to commit first-degree murder and/or kidnapping contrary to NMSA 1978, Section 30-28-2(A) (1979), and tampering with evidence contrary to NMSA 1978, Section 30-22-5 (1963, prior to 2003 amendment). Following a jury trial, Petitioner was found guilty of the offenses charged. *Kersey*, 120 N.M. at 518, 903 P.2d at 829. The jury returned "a general verdict of first degree murder under the alternate theories of willful and premeditated murder and felony murder." *Id.* at 521 n.1, 903 P.2d at 832 n.1; *see also* § 30-2-1(A)(1), (2) (distinguishing between "any kind of willful, deliberate and premeditated killing" and a killing "in the commission of or attempt

---

[1] Petitioner admitted that he had impersonated a police detective, removed Victim from Roswell High School, and transported Victim to Cedar Lake Lounge. However, Petitioner denied stabbing or strangling Victim, stating that

> Clark stabbed [Victim] several times with [an] ice pick and then asked [Petitioner] to hand him a piece of electrical cord. [Petitioner] said he thought Clark was going to use it to tie up [Victim] and not to strangle him. [Petitioner] watched Clark tie the cord around [Victim's] neck and then walked out of the building.

*Kersey*, 120 N.M. at 520, 903 P.2d at 831.

to commit any felony"). The trial court sentenced Petitioner to life imprisonment plus eighteen years. *Kersey*, 120 N.M. at 518, 903 P.2d at 829.

**{5}** Petitioner appealed directly to this Court, claiming, in relevant part, that his conviction and sentence for the crime of kidnapping violated the double jeopardy clause of the New Mexico and United States Constitutions because it was used "to elevate second-degree murder to first-degree [felony] murder." *Id.* at 522, 903 P.2d at 833. This Court noted that the "Double Jeopardy Clause does not prohibit multiple punishment for 'discrete acts violative of the same statute,'" and that acts are discrete when they are "'separated by sufficient indicia of distinctness,'" meaning that they are "'sufficiently separated by either time or space (in the sense of physical distance between the places where the acts occurred).'" *Id.* (quoting *Swafford v. State*, 112 N.M. 3, 13-14, 810 P.2d 1223, 1233-34 (1991)). Thus, a criminal defendant may be convicted of, and punished for, both felony murder and the underlying predicate felony when the conduct that forms the basis for each offense is "'separate and distinct.'" *Id.* at 523, 903 P.2d at 834 (quoting *Swafford*, 112 N.M. at 14, 810 P.2d at 1234).

**{6}** Applying this standard to the facts underlying Petitioner's convictions, this Court observed that

> [Petitioner] kidnapped [Victim] at the high school in Roswell about 10:30 a.m. Although kidnapping is a continuing offense, the conduct required to establish kidnapping was completed at the time [Petitioner], with the intent to hold [Victim] for service, unlawfully and forcibly took him from the school. This conduct alone did not violate the felony murder statute. The felony-murder statute was violated more than two hours later, nearly sixty miles distant from the abduction, when [Victim] was strangled and stabbed to death. The kidnapping was sufficiently separated in time and space from the murder to establish two distinct crimes.

*Id.* Accordingly, this Court held that Petitioner's "sentences for both kidnapping and felony murder do not violate the double jeopardy clauses of either the New Mexico or the United States Constitutions." *Id.*

**{7}** Thereafter, Petitioner filed a writ of habeas corpus in the United States District Court for the District of New Mexico, claiming, in relevant part, that "the sentencing court's imposition of consecutive sentences for his kidnapping and murder convictions violated his constitutional right against double jeopardy." *Kersey v. Lytle*, No. 99-2007, 2000 WL 331873, at *2 (10th Cir. March 30, 2000). The district court dismissed the writ of habeas corpus and Petitioner appealed to the Tenth Circuit Court of Appeals. *Id.* at *1. The Tenth Circuit Court of Appeals "affirm[ed] the district court's denial of relief on double jeopardy grounds," because the "imposition of consecutive sentences for [Petitioner's] kidnapping and felony murder convictions is not contrary to, or an unreasonable application of, Supreme Court precedent." *Id.* at *6; *see* 28 U.S.C. § 2254(d)(1) (Supp. II 1996) ("An application for

3

a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.").

**{8}** In May 2007, this Court issued its opinion in *Frazier*, which inquired for the first time whether "our felony murder statute expresses a clear legislative intent that a killing during the commission of a felony constitutes unitary conduct in every case, thereby precluding a unitary conduct inquiry by this Court into the specific facts of the case." 2007-NMSC-032, ¶ 17. After examining the language of our felony murder statute and jury instruction, we concluded that "the conduct supporting the felony murder and the underlying predicate felony [was] unitary by definition" because the statute "expressly requires that the killing happen 'in the commission of' the underlying felony." *Id.* ¶ 23; *see* § 30-2-1(A)(2) ("Murder in the first degree is the killing of one human being by another without lawful justification or excuse . . . *in the commission of or attempt to commit* any felony." (emphasis added)); Rule 14-202 NMRA (requiring the jury to find that the defendant caused the death of the victim during "the commission of" or "attempt to commit" the underlying felony). "Thus, when a jury finds a defendant guilty of felony murder, it has already determined the fact-based unitary conduct question—it has found that the killing happened *during* the commission of the underlying felony." *Frazier*, 2007-NMSC-032, ¶ 23.

**{9}** In *Frazier*, we recognized "that our holding represents a departure from certain cases included within our felony murder jurisprudence in which we have examined whether conduct is factually unitary, in some cases finding that it is not and allowing both convictions to stand." *Id.* ¶ 31. For example, in *Kersey* and *State v. Foster*, 1999-NMSC-007, ¶¶ 29-35, 126 N.M. 646, 974 P.2d 140, we examined the language of the kidnapping statute (the underlying predicate felony) to find that the conduct supporting the defendants' kidnapping and felony murder convictions was separate and distinct and, therefore, did not violate the prohibition against double jeopardy. *Frazier*, 2007-NMSC-032, ¶ 34. We stated that

> *Foster* and *Kersey* were correct in their analyses of the predicate felony statutes with respect to legislative intent on the issue of unitary conduct. However, those cases did not ask the question we ask here, which shifts the focus from the predicate felony statutes to the felony murder statute itself. That statute requires the killing to happen *in the commission of* a felony and the accompanying jury instructions require the jury to find that the killing happened *during the commission* of the predicate felony. . . . We do not believe the jury could so find and the language of the statute does not indicate that the legislature intended otherwise.

*Id.* ¶ 35. Accordingly, *Frazier* "clarif[ied] our precedent according to the legislative intent expressed in the felony murder statute." *Id.*

4

**{10}** Thereafter, Petitioner filed a petition for writ of habeas corpus in the trial court, claiming that *Frazier* effectively overruled this Court's opinion in *Kersey* and, therefore, his kidnapping conviction must be vacated. The State moved to dismiss the petition, arguing that "[t]he Supreme Court specifically distinguishes [Petitioner's] case from *Frazier* in its opinion and so it does not apply." The trial court agreed with the State, noting that "the Supreme Court in *Frazier* was well aware of its previous opinion in *Kersey* and in fact discussed and distinguished it," rather than revisiting or overruling it. Thus, the trial court determined that *Frazier* "[did] not announce a new rule for double jeopardy analysis" but, rather, simply "clarified the law in New Mexico regarding multiple punishments for first degree felony murder and the predicate felony." (quoting *State v. Gonzales*, 2007-NMSC-059, ¶ 11, 143 N.M. 25, 172 P.3d 162). Because there was "no clear indication in *Frazier* that the Supreme Court intended to disturb the conclusions and mandates issued in *Foster* and *Kersey*," the trial court granted the State's motion to dismiss Petitioner's writ of habeas corpus.

**{11}** Petitioner filed a petition for writ of certiorari in this Court pursuant to Rules 5-802(H)(2) and 12-501 NMRA. We granted the petition to determine "[w]hether Petitioner is entitled to the vacating of his kidnapping conviction as the 'predicate felony' for a felony murder conviction, pursuant to this Court's decisions in *State v. Frazier*, 2007-NMSC-032, and *State v. Gonzales*, 2007-NMSC-059." *Kersey v. Hatch*, 2008-NMCERT-012, 145 N.M. 572, 203 P.3d 103.

## II.    DISCUSSION

**{12}** In this case, the jury returned a general verdict of first-degree murder under two alternative theories, willful and premeditated murder in violation of Section 30-2-1(A)(1) and felony murder in violation of Section 30-2-1(A)(2). The double jeopardy clause requires "a conviction under a general verdict to be reversed if one of the alternative bases for conviction provided in the jury instructions is 'legally inadequate' because it violates a defendant's constitutional right to be free from double jeopardy." *Foster*, 1999-NMSC-007, ¶ 27; *see Gonzales*, 2007-NMSC-059, ¶ 8. This is because "[j]urors are not generally equipped to determine whether a particular theory of conviction submitted to them is contrary to law." *Foster*, 1999-NMSC-007, ¶ 28 (internal quotation marks and citation omitted).

> Thus, we cannot assume that jurors will know to avoid an alternative basis for reaching a guilty verdict that would result in a violation of the Double Jeopardy Clause. On the contrary, we must presume that a conviction under a general verdict requires reversal if the jury is instructed on an alternative basis for the conviction that would result in double jeopardy, and the record does not disclose whether the jury relied on this legally inadequate alternative.

5

*Id.* (citation omitted). "If double jeopardy is violated, we must vacate the conviction for the lesser offense." *Gonzales*, 2007-NMSC-059, ¶ 10.

**{13}** Our responsibility on appeal is to determine whether the rule announced in *Frazier* applies to this case, thereby rendering Petitioner's multiple separate convictions for felony murder and the predicate felony of kidnapping contrary to the double jeopardy clause. If a double jeopardy violation exists, then the appropriate remedy is to vacate Petitioner's kidnapping conviction.

**{14}** "It is within the inherent power of this Court to give its decision prospective or retroactive application without offending constitutional principles." *Santillanes v. State*, 115 N.M. 215, 223, 849 P.2d 358, 366 (1993); *see also Danforth v. Minnesota*, 552 U.S. 264, 280-81 (2008) (holding that the nonretroactivity doctrine adopted by the United States Supreme Court in *Teague* was not intended "to limit a state court's authority to grant relief for violations of new rules of constitutional law when reviewing its own State's convictions"); 1 Wayne R. LaFave et al., *Criminal Procedure* § 2.11(a), at 867 (3d ed. 2007) ("[T]he state courts remain free to adopt their own positions on the retroactive application of new rulings under state law."). "Retroactivity is a legal question, which we review de novo." *Stein v. Alpine Sports, Inc.*, 1998-NMSC-040, ¶ 6, 126 N.M. 258, 968 P.2d 769.

## A. Threshold Issues to Retroactivity Analysis

**{15}** The question of whether a new rule applies retroactively arises only if a judicial opinion in fact announces a new rule after a defendant's criminal conviction has been finalized. *See State v. Mascarenas*, 2000-NMSC-017, ¶ 24, 129 N.M. 230, 4 P.3d 1221 ("An appellate court's consideration of whether a rule should be retroactively or prospectively applied is invoked only when the rule at issue is in fact a 'new rule.'"); *Santillanes*, 115 N.M. at 223, 849 P.2d at 366 ("The issue of retroactive effect arises only when a court's decision overturns prior case law or makes new law when law enforcement officials have relied on the prior state of the law."); *State v. Rogers*, 93 N.M. 519, 521, 602 P.2d 616, 618 (1979) ("The question of whether or not a rule of law is to be applied retrospectively arises only for causes that have been finalized."). Accordingly, as a threshold matter, we must determine whether (1) *Frazier* announced a new rule and (2) our opinion in *Frazier* was released after Petitioner's criminal convictions became final.

### 1. Whether *Frazier* Announced a New Rule

**{16}** A case generally announces a new rule "'when it breaks new ground or imposes a new obligation on the States or the Federal Government. To put it differently, a case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final.'" *Mascarenas*, 2000-NMSC-017, ¶ 24 (quoting *Teague*, 489 U.S. at 301); *see also State v. Frawley*, 2007-NMSC-057, ¶ 35, 143 N.M. 7, 172 P.3d 144 (same); *State v. Forbes*, 2005-NMSC-027, ¶ 7, 138 N.M. 264, 119 P.3d 144 (same). Thus, "a court establishes a new rule when its decision is 'flatly inconsistent with

6

the prior governing precedent' and is an 'explicit overruling of an earlier holding.'" *Frawley*, 2007-NMSC-057, ¶ 35 (quoting *Whorton v. Bockting*, 549 U.S. 406, 416 (2007)).

**{17}** We conclude that *Frazier* announced a new rule because it was flatly inconsistent with our precedent governing multiple convictions for felony murder and the predicate felony. In *Frazier*, this Court held "for the first time" that felony murder "and the predicate felony are actually greater and lesser included offenses in every case, one subsumed within the other," thereby precluding multiple separate convictions for both offenses under the double jeopardy clause. *Frazier*, 2007-NMSC-032, ¶ 1. *Frazier* represents a significant departure from our prior jurisprudence, which upheld multiple separate convictions for felony murder and the predicate felony, so long as the defendant's conduct underlying each conviction was separate and distinct. *See, e.g.*, *Foster*, 1999-NMSC-007, ¶ 35 (upholding multiple convictions for felony murder and the predicate felony, aggravated kidnapping, because the defendant's conduct was non-unitary); *State v. Mora*, 1997-NMSC-060, ¶ 69, 124 N.M. 346, 950 P.2d 789 (upholding multiple convictions for felony murder and the predicate felony, criminal sexual contact, because the defendant's conduct was non-unitary); *Kersey*, 120 N.M. at 523, 903 P.2d at 834 (upholding multiple convictions for felony murder and the predicate felony, kidnapping, because the defendant's conduct was non-unitary); *State v. Ortega*, 112 N.M. 554, 571, 817 P.2d 1196, 1213 (1991) (same). Because *Frazier* replaced our fact-based unitary conduct inquiry with a bright-line rule of law precluding multiple convictions for felony murder and the predicate felony, we have little trouble concluding that *Frazier* announced a new rule.

**{18}** Petitioner claims, however, that *Frazier* did not announce a new rule because it simply distinguished, rather than overruled, our prior felony murder jurisprudence. We disagree. "[A] decision need not overrule a prior decision in order to qualify as 'new.'" 7 Criminal Procedure, *supra*, § 28.6(d), at 247. Rather, an opinion announces a new rule if it breaks new ground, imposes new obligations on the government, or was not dictated by precedent. *Mascarenas*, 2000-NMSC-017, ¶ 24. Our opinion in *Frazier* broke new ground and was not dictated by precedent and, therefore, announced a new rule.

2. **Whether Petitioner's Conviction was Final as of the Date that this Court's Opinion in *Frazier* was Filed**

**{19}** Except in limited circumstances, a change in the law does not apply to cases that have been finalized before a court's opinion is filed. *State v. Nunez*, 2000-NMSC-013, ¶ 114, 129 N.M. 63, 2 P.3d 264. However, a change in the law generally applies to cases pending on direct appeal, as long as the issue was raised and preserved below or the failure to apply the new rule constitutes fundamental error. *Id.* Petitioner argues that the new rule announced in *Frazier* applies to his case because his direct appeal was pending at the time that this Court issued its opinion in *State v. Contreras*, 120 N.M. 486, 903 P.2d 228 (1995), which prefigured our holding in *Frazier*, but for its cursory analysis of unitary conduct, *Frazier*, 2007-NMSC-032, ¶ 25. Petitioner raised this argument for the first time in his reply brief and, therefore, we decline to address it. *See State v. Fairweather*, 116 N.M. 456, 463,

7

863 P.2d 1077, 1084 (1993) (refusing to address a claim raised for the first time in a reply brief).

**{20}**    As we previously have observed, "[a] case is finalized when 'a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for filing a petition for certiorari elapsed or a petition for certiorari finally denied.'" *Nunez*, 2000-NMSC-013, ¶ 114 (quoting *Griffith v. Kentucky*, 479 U.S. 314, 321 n.6 (1987)). Petitioner's judgment of conviction had been rendered, his direct appeal had been exhausted, and the time for filing a petition for certiorari had expired more than ten years before our opinion in *Frazier* was filed. *Compare Kersey*, 120 N.M. at 523, 903 P.2d at 834 (affirming Petitioner's convictions on direct appeal in 1995), *with Frazier*, 2007-NMSC-032, ¶ 31 (adopting a new rule in felony murder and predicate felony cases in 2007). Accordingly, the new rule announced in *Frazier* does not apply to Petitioner's finalized case, unless it meets the stringent standard for retroactivity. *See infra* Part B.

## B.    Whether the New Rule Announced in *Frazier* Applies Retroactively

**{21}**    "New Mexico courts have not dealt comprehensively with the issue of retroactivity in the context of criminal cases as yet." *State v. Ulibarri*, 1999-NMCA-142, ¶ 22, 128 N.M. 546, 994 P.2d 1164. In some cases, New Mexico courts have applied the standards set forth by the United States Supreme Court in *Linkletter v. Walker*, 381 U.S. 618 (1965) impliedly overruled by *Teague*, 489 U.S. at 310, without acknowledging that "'the United States Supreme Court had abandoned the *Linkletter* approach.'" *Mascarenas*, 2000-NMSC-017, ¶ 23 n.5 (quoting *Ulibarri*, 1999-NMCA-142, ¶ 22); *see, e.g.*, *Nunez*, 2000-NMSC-013, ¶¶ 113, 116 (applying the *Linkletter* retroactivity standard); *Jackson v. State*, 1996-NMSC-054, ¶ 6, 122 N.M. 433, 925 P.2d 1195 (same); *Santillanes*, 115 N.M. at 224, 849 P.2d at 367 (same). However, in at least one other case, this Court has applied the retroactivity standard adopted by the United States Supreme Court in *Teague*, which effectively overruled the *Linkletter* standard. *Frawley*, 2007-NMSC-057, ¶ 37 (applying the *Teague* retroactivity standard). We take this opportunity to clarify the appropriate standard by which to determine whether a new rule applies retroactively to finalized criminal convictions.

### 1.    Whether New Mexico Courts Should Apply the *Linkletter* or the *Teague* Standard of Retroactivity

**{22}**    In *Linkletter*, the United States Supreme Court considered whether its opinion in *Mapp v. Ohio*, 367 U.S. 643 (1961), which "held that the exclusion of evidence seized in violation of the search and seizure provisions of the Fourth Amendment was required of the States by the Due Process Clause of the Fourteenth Amendment," applied retroactively to habeas corpus proceedings. *Linkletter*, 381 U.S. at 619. The Court held that retroactive application "must be determined on a case by case basis by looking at three issues: the purpose of the new rule, the reliance placed upon the old rule, and the effect upon the administration of justice that retroactive application would have." *Santillanes*, 115 N.M. at 224, 849 P.2d at 367 (citing *Linkletter*, 381 U.S. at 636). In *Linkletter*, the Court noted that

8

the purpose of the exclusionary rule was to deter lawless police action and that "this purpose would [not] be advanced by making the rule retrospective." 381 U.S. at 637. Additionally, the Court determined that the States reasonably had relied upon the prior rule and that retroactive application of the new rule in *Mapp* "would tax the administration of justice to the utmost." *Id.* Thus, the Court held that its opinion in *Mapp* was not subject to retroactive application. *Id.*

{23} Twenty-four years later, in *Teague*, the Court decided that its "approach to retroactivity for cases on collateral review require[d] modification," because the "*Linkletter* retroactivity standard has not led to consistent results." 489 U.S. at 301, 302. After examining the nature of habeas corpus, the Court held that "new rules generally should not be applied retroactively to cases on collateral review." *Id.* at 305-06, 308. The Court reasoned that

> Habeas corpus always has been a *collateral* remedy, providing an avenue for upsetting judgments that have become otherwise final. It is not designed as a substitute for direct review. The interest in leaving concluded litigation in a state of repose, that is, reducing the controversy to a final judgment not subject to further revision, may quite legitimately be found by those responsible for defining the scope of the writ to outweigh in some, many, or most instances the competing interest in readjudicating convictions according to all legal standards in effect when a habeas petition is filed.

*Id.* at 306 (quoting *Mackey v. United States*, 401 U.S. 667, 682-83 (1971) (Harlan, J., concurring in part and dissenting in part)). Given the "broad scope of constitutional issues cognizable on habeas," the Court concluded "that it is 'sounder, in adjudicating habeas petitions, generally to apply the law prevailing at the time a conviction became final than it is to seek to dispose of [habeas] cases on the basis of intervening changes in constitutional interpretation.'" *Id.* (quoting *Mackey*, 401 U.S. at 689 (Harlan, J., concurring in part and dissenting in part)).

{24} The Court recognized only two exceptions to the general rule of nonretroactivity for cases on collateral review. The first exception permits the retroactive application of a new rule "if [the rule] places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe," *id.* at 311 (internal quotations marks and citation omitted), or "addresses a substantive categorical guarante[e] accorded by the Constitution, such as a rule prohibiting a certain category of punishment for a class of defendants because of their status or offense," *Graham v. Collins*, 506 U.S. 461, 477 (1993) (internal quotation marks and citation omitted). Such substantive rules apply retroactively because "they necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal or faces a punishment that the law cannot impose upon him." *Schriro v. Summerlin*, 542 U.S. 348, 352 (2004) (internal quotation marks and citation omitted). The second exception permits the retroactive application of a new rule if the rule announces a "watershed rule[] of criminal procedure implicating the fundamental fairness

9

and accuracy of the criminal proceeding." *Graham*, 506 U.S. at 478 (internal quotation marks and citation omitted). "That a new procedural rule is 'fundamental' in some abstract sense is not enough; the rule must be one without which the likelihood of an accurate conviction is *seriously* diminished." *Schriro*, 542 U.S. at 352 (internal quotation marks and citation omitted).

**{25}** We agree with the United States Supreme Court that the *Linkletter* standard fails to yield consistent results, and that the *Teague* standard, which focuses on the function and purpose of the writ of habeas corpus, is the proper standard by which to determine whether new rules should apply retroactively to habeas corpus proceedings. Accordingly, pursuant to *Teague* and its progeny, we conclude that new rules generally should not be afforded retroactive effect unless (1) the rule is substantive in nature, in that it "alters the range of conduct or the class of persons that the law punishes," *Frawley*, 2007-NMSC-057, ¶ 39 (quoting *Schriro*, 542 U.S. at 353), or (2) although procedural in nature, the rule announces a watershed rule of criminal procedure, *id.* ¶ 42 ("The watershed exception is extremely narrow; since *Teague*, the Supreme Court has rejected every claim that a new rule satisfied the requirements for watershed status." (internal quotation marks and citation omitted)).

**{26}** Petitioner urges this Court to adopt a more liberal standard of retroactivity under the due process clause of the New Mexico Constitution, arguing that "this is a **state** habeas proceeding, rather than federal, and the overriding concern of state courts is error correction rather than the more vague concepts of 'federalism.'" We disagree. The purpose of the writ of habeas corpus in the state and federal system essentially is the same, namely, "to protect a person from being erroneously deprived of his or her rights." *Campos v. Bravo*, 2007-NMSC-021, ¶ 5, 141 N.M. 801, 161 P.3d 846; *see also Harris v. Nelson*, 394 U.S. 286, 290-91 (1969) ("The writ of habeas corpus is the fundamental instrument for safeguarding individual freedom against arbitrary and lawless state action."). However, this purpose must be balanced against the government's "'interest in the finality of a conviction once it has accorded an accused all of the constitutional rights required by law.'" *Montoya v. Ulibarri*, 2007-NMSC-035, ¶ 29, 142 N.M. 89, 163 P.3d 476 (quoting *People v. Cole*, 765 N.Y.S.2d 477, 486 (N.Y. App. Div. 2003)). We conclude that the *Teague* standard appropriately balances both the purpose of the writ and the government's interest in finality by applying "the law prevailing at the time a conviction became final" and refusing, except in limited circumstances, "to dispose of [habeas] cases on the basis of intervening changes in constitutional interpretation." *Teague*, 489 U.S. at 306 (internal quotation marks and citation omitted). Accordingly, we reject Petitioner's claim.

2. **Whether the Rule Announced in *Frazier* Applies Retroactively Under the *Teague* Standard**

**{27}** We next address whether the new rule announced in *Frazier* applies retroactively to Petitioner's case under the *Teague* standard. Petitioner concedes that *Frazier* did not announce a watershed rule of criminal procedure, but argues that it implemented a substantive change in the law, which applies retroactively to his case, because it altered the

10

range of conduct for which he may be punished. The State responds that *Frazier* announced a procedural rule, which applies prospectively only, because it did not place felony murder and kidnapping beyond the State's power to punish, but simply changed the number of convictions and the range of possible sentences.

**{28}** In *United States v. Salerno*, 964 F.2d 172, 176 (2d Cir. 1992), the Second Circuit Court of Appeals considered whether the United States Supreme Court's opinion in *Grady v. Corbin*, 495 U.S. 508 (1990), *overruled by United States v. Dixon*, 509 U.S. 688, 704 (1993), applied retroactively to habeas corpus proceedings. *Grady* held that "the Double Jeopardy Clause bars any subsequent prosecution in which the government, to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted." 495 U.S. at 521. The Second Circuit court concluded that *Grady* established a new rule, which can be applied retroactively only if it satisfies one of the two *Teague* exceptions: (1) it "place[s] an entire category of primary conduct beyond the reach of the criminal law, or . . . prohibit[s the] imposition of a certain type of punishment for a class of defendants because of their status or offense," or (2) it establishes a "'watershed rule[] of criminal procedure' that [is] necessary to the fundamental fairness of the criminal proceeding." *Salerno*, 964 F.2d at 177-78 (internal quotation marks and citation omitted). The Second Circuit court held that *Grady* did not satisfy the first *Teague* exception because

> [t]he rule established in *Grady* does not immunize primary conduct from overall, or any specific, criminal punishment. Manifestly, the offenses for which [defendants] were convicted remain illegal after *Grady*. *Grady* would establish, at most, that their admittedly criminal conduct cannot be prosecuted in separate trials. This, we believe, is a procedural matter properly tested under the second, rather than first, exception to the prohibition against retroactive application of new rules.

*Salerno*, 964 F.2d at 178. The Second Circuit court further held that *Grady* did not satisfy the second *Teague* exception because it did not establish a watershed rule of criminal procedure. *Salerno*, 964 F.2d at 179 (holding that *Grady* did not satisfy the second *Teague* exception because it did not "alter the general understanding of the bedrock procedural elements essential to the fairness of a proceeding"). Accordingly, the new double jeopardy rule announced in *Grady* was not subject to retroactive application. *Salerno*, 964 F.2d at 179.

**{29}** Likewise, in *Taylor v. State*, 717 N.E.2d 90, 95 (Ind. 1999), the Indiana Supreme Court considered whether its opinion in *Richardson v. State*, 717 N.E.2d 32 (Ind. 1999), applied retroactively to post-conviction proceedings. *Richardson* held that

> two or more offenses are the "same offense" in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to *either* the statutory elements of the challenged crimes or the actual evidence used to convict, the essential

11

elements of one challenged offense also establish the essential elements of another challenged offense.

717 N.E.2d at 49. The Indiana Supreme Court in *Taylor* rejected the defendant's claim that *Richardson* applied retroactively to his case, reasoning that *Richardson* "formulated a new methodology for analysis of claims under the Indiana Double Jeopardy Clause. . . . [T]his formulation constitut[ed] a new constitutional rule of criminal procedure, and thus is not available for retroactive application in post-conviction proceedings." 717 N.Ed.2d at 95 (citing *Daniels v. State*, 561 N.E.2d 487, 489 (Ind. 1990) (electing "to follow the approach of *Teague* and [its progeny] in addressing the retroactivity of new law to cases on review pursuant to petitions for post-conviction relief under Indiana procedure" (footnote omitted))).

**{30}**     Similar to *Salerno* and *Taylor*, we conclude that our opinion in *Frazier* adopted a new methodology for the review of double jeopardy claims involving multiple separate convictions for felony murder and the underlying predicate felony. *Frazier* did not alter the range of conduct or the class of persons that the law punishes. The crimes of felony murder and kidnapping were illegal before the release of our opinion in *Frazier*, and they remain illegal today. *See* § 30-2-1(A)(1)(2); § 30-4-1. Additionally, the requirements for conviction are the same both before and after *Frazier*, in that the State is required to prove the essential elements of felony murder, as well as the essential elements of the underlying predicate felony, in order to secure a conviction. *See Frawley*, 2007-NMSC-057, ¶ 41 (holding that the adoption of a new rule was procedural, rather than substantive, because the rule only affected the defendant's sentence and the requirements for conviction remained the same). Accordingly, we conclude that *Frazier* formulated a new rule of criminal procedure, which does not implicate the fundamental fairness or accuracy of the criminal proceeding and, as such, is not available for retroactive application in habeas corpus proceedings. We therefore affirm the trial court's dismissal of Petitioner's writ of habeas corpus.

## III.     CONCLUSION

**{31}**     We conclude that our opinion in *Frazier*, which held for the first time that multiple separate convictions of felony murder and the predicate felony violate the double jeopardy clause, announced a new rule that is not subject to retroactive application unless it falls within one of the two exceptions established by the United States Supreme Court in *Teague*: (1) it is a substantive rule that alters the range of conduct or the class of persons that the law punishes, or (2) it is a watershed rule of criminal procedure. The new rule announced in *Frazier* does not satisfy either of these two exceptions and, therefore, does not apply retroactively to Petitioner's writ of habeas corpus. Accordingly, we affirm the trial court's dismissal of Petitioner's writ of habeas corpus.

**{32}     IT IS SO ORDERED.**

_____

**PETRA JIMENEZ MAES, Justice**

**WE CONCUR:**

_____
**CHARLES W. DANIELS, Chief Justice**

_____
**PATRICIO M. SERNA, Justice**

_____
**RICHARD C. BOSSON, Justice**

_____
**EDWARD L. CHÁVEZ, Justice**

**Topic Index for _Kersey v. Hatch_, No. 31,325**

| **CL** | **CRIMINAL LAW** |
|--------|------------------|
| CL-FM  | Felony Murder    |

| **CA** | **CRIMINAL PROCEDURE** |
|--------|------------------------|
| CA-DJ  | Double Jeopardy        |
| CA-PI  | Prospective Application |
| CA-WH  | Writ of Habeas Corpus  |