This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

**v.**                                              **No. 31,543**

**CONNIE GARRISON,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**Jerry H. Ritter, Jr., District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Francine A. Baca-Chavez, Assistant Attorney General
Albuquerque, NM

for Appellee

Connie Garrison
Ruidoso, NM

Pro Se Appellant

## MEMORANDUM OPINION

**SUTIN, Judge.**

Defendant, pro se, appeals from her conviction for speeding (16-20 miles over the posted speed limit). Defendant contends that the State did not sufficiently establish either the legal speed limit for the area of highway on which she was traveling or the speed with which she was traveling on it. Defendant raises these arguments as challenges to the sufficiency of the evidence. We are not persuaded that Defendant has demonstrated error. We affirm.

**DISCUSSION**

Our review of a sufficiency of the evidence question involves a two-step process. *See State v. Apodaca*, 118 N.M. 762, 766, 887 P.2d 756, 760 (1994). Initially, we view the evidence in the light most favorable to the verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict, and then we must "make a legal determination of whether the evidence viewed in this manner could justify a finding by any rational trier of fact that each element of the crime charged has been established beyond a reasonable doubt." *Id.* (internal quotation marks and citation omitted). "The question is whether the [district] court's decision is supported by substantial evidence, not whether the court could have reached a different conclusion." *In re Ernesto M., Jr.*, 1996-NMCA-039, ¶ 15, 121 N.M. 562, 915 P.2d 318. "The reviewing court does not weigh the evidence or substitute its judgment for that of the fact[-]finder as long as there is sufficient

evidence to support the verdict." *State v. Mora*, 1997-NMSC-060, ¶ 27, 124 N.M. 346, 950 P.2d 789, *abrogated on other grounds by Kersey v. Hatch*, 2010-NMSC-020, 148 N.M. 381, 237 P.3d 683.

**A.    The Speed Limit**

The speeding regulation, under which Defendant was convicted, prohibits a person from driving on a highway over "the posted speed limit in construction zones . . . or other safety zones . . . as designated by the [state] highway and transportation department, provided that the posted speed limit shall be determined by an engineering study performed by the state highway and transportation department." NMSA 1978, § 66-7-301(A)(4) (2002).  Defendant contends that it was the State's burden to establish the speed limit in accordance with this regulation, which, she argues, required the State to produce the traffic engineering survey that assessed the appropriate speed limit for the area of highway on which she was issued a traffic citation.  Defendant refers us to no controlling case law to support this contention and we are not aware of any.  *See In re Adoption of Doe*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984) (stating that an appellate court will not consider an issue if no authority is cited in support of that issue and we therefore assume no such authority exists).  Instead, Defendant refers us to cases for the general proposition that the State carries the burden to prove a fact through evidence.  Defendant's argument does not

persuade us that the speeding regulation places a burden on the State to produce a copy of the engineering study from the State Highway and Transportation Department in proving a prima facie case that a driver was speeding. *See State v. Trossman*, 2009-NMSC-034, ¶ 17, 146 N.M. 462, 212 P.3d 350 ("In general legal parlance, 'prima facie evidence' is '[e]vidence that will establish a fact or sustain a judgment unless contradictory evidence is produced.' " (quoting Black's Law Dictionary 598 (8th ed. 2004))). With this in mind, we examine the sufficiency of the State's evidence.

In the present case, the officer testified that Defendant was driving eighty-six miles per hour in an area with a posted speed limit of sixty-five miles per hour that was close to a fifty-five mile per hour zone. The officer also testified that he had been a New Mexico State police officer for twelve years and had been assigned to Otero County for eleven and a half years, from which the district court could reasonably infer that he was familiar with the posted traffic limits in Otero County. *See Apodaca*, 118 N.M. at 766, 887 P.2d at 760 (indicating that on appeal the appellate courts view the evidence in the light most favorable to the verdict, indulge all permissible inferences, and resolve all conflicts in the evidence in favor of the verdict).

Defendant did not challenge the officer's testimony with any contrary evidence about the speed limit. Rather, Defendant argued in a pretrial motion to dismiss, nearly

four and a half months before trial, that the state police failed to supply her with a copy of the engineering study, which she considered exculpatory evidence subject to disclosure and subpoena. The district court informed Defendant that the officer is not the custodian of the engineering surveys, that the state police is a separate and distinct entity from the state highway department, and that she would need to subpoena the engineering survey from the state highway department, given that the officer has the burden to prove and provide only evidence that is in his possession, not to do Defendant's investigation for her. The trial record shows that Defendant never rebutted the State's evidence by producing a copy of an engineering study showing that the speed limit was higher than the officer indicated in the charging document or his trial testimony. Under these circumstances, we fail to see why the officer's testimony about the posted speed limit was insufficient. *See State v. Salgado*, 1999-NMSC-008, ¶ 25, 126 N.M. 691, 974 P.2d 661 (stating that substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" (internal quotation marks and citation omitted)); *State v. Salas*, 1999-NMCA-099, ¶ 13, 127 N.M. 686, 986 P.2d 482 (recognizing that it is for the fact-finder to assess the weight and credibility of the testimony).

To the extent that Defendant may be arguing that the State failed to show that the speed limit was legal under NMSA 1978, Section 66-7-303 (1996), or Section 66-

5

7-301, Defendant did not clearly and sufficiently argue this matter below. In her brief in chief, Defendant asserts that the State admitted there was no traffic engineering survey and that the speed limit was seventy-five miles per hour on the highway. Defendant does not refer to the record to support her assertion and nothing in the record supports any such alleged admission from the State. *See* Rule 12-213(A)(4) NMRA (stating that the brief in chief shall contain "the contentions of the appellant and a statement explaining how the issue was preserved in the court below, with citations to authorities, record proper, transcript of proceedings[,] or exhibits relied on"); *State v. Jensen*, 1998-NMCA-034, ¶ 18, 124 N.M. 726, 955 P.2d 195 ("When a case is assigned to a general calendar, the factual basis for the issues must be contained in the record of proceedings made below."). Also, nothing in the record suggests that Defendant presented any legal or factual argument to support her contention that the speed limit was not established in accordance with statute. *See State v. Varela*, 1999-NMSC-045, ¶ 25, 128 N.M. 454, 993 P.2d 1280 (stating that, to preserve an issue for appeal, the defendant must make an objection that specifically apprises the district court of the nature of the claimed error and invokes an intelligent ruling thereon). Therefore, we have no record concerning the substance of her issue to review on appeal. Also, as we indicated earlier, Defendant's sparse and unclear argument does not persuade us that the State must produce a highway engineering

study as part of its prima facie case against a driver for speeding. At best, Defendant's challenge to whether the speed limit was properly established according to statute might be an affirmative defense to speeding; however, in order to properly raise such a defense, Defendant was required to produce evidence and argument to support it. *See State v. Stanley*, 2001-NMSC-037, ¶ 30, 131 N.M. 368, 37 P.3d 85 (explaining that where "a defendant did not bear the burden of proof that the decedent caused a fatal crash, the defense's accident theory was not an affirmative defense"); *State v. Munoz*, 1998-NMSC-041, ¶ 15, 126 N.M. 371, 970 P.2d 143 (recognizing that a criminal defendant bears the burden of proof of an affirmative defense); *cf. City of Albuquerque v. Chavez*, 1997-NMCA-034, ¶¶ 9-10, 123 N.M. 258, 939 P.2d 1066 (indicating that generally the party who claims an affirmative defense, including a criminal defendant, bears the burden of proof and production), *rev'd on other grounds*, 1998-NMSC-033, 125 N.M. 809, 965 P.2d 928. Because Defendant failed to do so, she has not preserved the matter for our review. *See State v. Gomez*, 1997-NMSC-006, ¶ 29, 122 N.M. 777, 932 P.2d 1 (stating that our preservation rules require that "parties . . . assert the legal principle upon which their claims are based and . . . develop the facts in the trial court"). For the foregoing reasons, we do not address this argument further. *See In Re Aaron L.*, 2000-NMCA-024, ¶ 10, 128 N.M. 641, 996 P.2d 431 (stating that, on appeal, the reviewing court will not consider issues

not raised in the lower court unless the issues involve matters of fundamental error or fundamental rights).

**B.    The Measure of Defendant's Speed**

Defendant also challenges the sufficiency of the evidence on the basis that the officer did not accurately or reliably measure the speed with which Defendant was driving. Defendant preserved this issue by cross-examining the officer at trial on his use and knowledge of the radar equipment. While we acknowledge that an attack on the reliability and accuracy of an officer's radar might be raised in a challenge to the admission of evidence, Defendant did not raise such a challenge in this case. *Cf. State v. Martinez*, 2007-NMSC-025, ¶¶ 9-12, 141 N.M. 713, 160 P.3d 894 (observing that admission of a breath card into evidence requires an evidentiary foundation indicating that the accuracy-ensuring regulations governing the breath alcohol tests were satisfied). Because Defendant argues her challenge to the officer's use and knowledge of the radar equipment as an attack on the weight and credibility of the officer's testimony, we do the same here.

In her brief in chief, Defendant repeatedly complains that the officer did not read the owners's manual for the radar and that he could not obtain an accurate reading because he strikes his tuning forks on metal surfaces of his patrol unit to calibrate the radar equipment, which the radar manual warns may damage the tuning

forks and create spurious overtones, which could result in false readings. We observe, however, that the trial testimony also demonstrated that the manual explained that the spurious overtones may cause the speed readings to be only slightly higher than specified and that such readings are only momentary, and the proper readings would be displayed as the false overtones dissipate.

In addition, the officer testified extensively on his knowledge of his patrolling equipment and his training regarding, and extensive experience with, the radar he used to detect Defendant's speed. Specifically, the officer testified that he received specialized training on the use of the radar equipment prior to becoming a patrol officer, including its installation in the officer's patrol unit, the use of the radar, the calibration of the antennas that accompany the radar; and he had hands-on training in actual speed enforcement and speed recognition without the radar. On cross-examination, the officer explained that the training he received from the police academy regarding the radar equipment was more detailed than the radar's manual and more specific to his duties and responsibilities as a police officer patrolling traffic. The officer also testified that he was assigned the same patrol unit and was in exclusive possession of it for seven years and that he was assigned the same traffic radar equipment, called the Golden Eagle, for nine years, even longer than the vehicle. The officer explained that every day, he begins service by running everything in his

unit and detailed how he ensures that all of his traffic control equipment is working properly in both stationary mode and moving mode, and he enters it into his daily logs.

The State entered into evidence the officer's daily log for the day he pulled over Defendant for speeding, as the officer testified that he checked his equipment and found that the radar was working properly on that day and the next morning. The officer testified that at the time he pulled over Defendant, he was traveling sixty-five miles per hour, the speed limit, and had set his cruise control for that speed with the radar on, and observed Defendant's vehicle traveling from the opposite direction. The officer conducted speed tests on Defendant's vehicle, checking both the front and rear radar antennas, and stated that the radar showed Defendant's speed coming at the officer to be eighty-six miles per hour and showed that Defendant passed him at approximately the same speed. The officer explained that there were no other vehicles in the area at that time to interfere with the radar. The officer noted on the citation that Defendant asked for a warning when he pulled her over, which the officer considered significant because she would not have done so if she did not know she was speeding.

Defendant further questioned the officer about possible interferences with the radar's reading, such as the patrol unit's fan, radio frequency, and the operation of the

radar's air filter, as well as the patrol unit's battery and tires. The officer explained how none of the factors with which Defendant was concerned affected the radar's accuracy. Of particular concern to Defendant at trial and on appeal is whether the fan created a ten mile per hour increase in the reading of Defendant's speed, which the officer explained was not a concern in this case because the fan is only an issue when the patrol unit is stationary and the officer's patrol unit was traveling when the radar measured Defendant's speed.

At the close of evidence, Defendant moved to dismiss on the grounds that the State had not met its burden of proof. The district court disagreed and ruled that the radar reading that the officer testified to was admissible and accurate beyond a reasonable doubt at least to plus or minus one mile per hour. Accordingly, the district court found that the State presented sufficient evidence that Defendant was speeding eighty-five miles per hour in a sixty-five mile per hour zone. The district court observed that Defendant did not introduce any independent evidence that caused the court to question the accuracy of the certified radar unit or the use of it by the experienced officer who was certified to operate it and who regularly used it in a reliable manner. The district court also observed that Defendant did not produce any independent evidence to question the officer's testimony as to the speed limit.

As we indicated earlier, an appellate court does not reweigh the evidence on appeal or substitute our judgment for that of the fact-finder. *See Mora*, 1997-NMSC-060, ¶ 27. Defendant has presented no argument that persuades us that the officer's testimony about the speed limit and his knowledge and use of the radar equipment was legally insufficient. *See State v. Dowling*, 2011-NMSC-016, ¶ 20, 150 N.M. 110, 257 P.3d 930 (noting that substantial evidence review involves "deference to the resolution of factual conflicts and inferences derived therefrom, and a legal determination of whether the evidence viewed in this manner could support the conviction" (internal quotation marks and citation omitted)). We hold that the evidence supporting the district court's verdict of guilt was clearly adequate. *See, e.g., Salgado*, 1999-NMSC-008, ¶ 25 (defining substantial evidence).

**CONCLUSION**

We affirm Defendant's conviction.

**IT IS SO ORDERED.**

_____
**JONATHAN B. SUTIN, Judge**

**WE CONCUR:**

_____
**CYNTHIA A. FRY, Judge**

_____

**M. MONICA ZAMORA, Judge**