This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

**v.**                                             **No. 33,681**

**SANTIAGO ACEVES,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Briana H. Zamora, District Judge**

Gary K. King, Attorney General
Albuquerque, NM

for Appellee


Law Offices of the Public Defender
Jorge A. Alvarado, Chief Public Defender
Sergio Viscoli, Appellate Defender
Vicki W. Zelle, Assistant Appellate Public Defender
Albuquerque, NM

for Appellant


**MEMORANDUM OPINION**

**HANISEE, Judge.**

{1}    Defendant appeals from the district court's judgment adversely resolving his on-record metropolitan court appeal by affirming Defendant's conviction of aggravated DWI (first offense). [RP 152] The district court's judgment is supported by a memorandum opinion. [RP 135-51] Defendant raises three issues on appeal: (1) whether the traffic stop was justified by reasonable suspicion in light of the officer's mistake of law regarding Defendant's failure to maintain his lane and the officer's pretextual motivation for stopping Defendant; (2) whether the State presented sufficient evidence to prove that Defendant's driving was impaired by alcohol; and (3) whether aggravation of the DWI charge was illegal because the evidence that Defendant refused the breath test was equivocal rather than willful since Defendant agreed to take a blood test rather than the breath test. [DS 21]

{2}    The calendar notice proposed summary affirmance. [Ct. App. File, CN1] Defendant has filed a memorandum in opposition that we have duly considered. [Ct. App. File, MIO] Unpersuaded, however, we affirm.

**DISCUSSION**

**Issue 1A - Mistake of law.**

{3}    In the memorandum, Defendant argues that the careless driving alternative for justifying the stop should not be considered on appeal, because the State failed to raise

this alternative below and therefore the trial court had no opportunity to consider the merits of, or rule intelligently on, that argument. [MIO 25-26] This issue requires us to examine the basis for the metropolitan court's order denying Defendant's motion to suppress. [RP 68-70] Our review reveals that Defendant's argument regarding preservation lacks merit.

{4} In its memorandum opinion, the district court observed that the officer testified that she pulled Defendant over because Defendant was failing to maintain his lane and concluded that this was a mistake of law. [RP 141-42] The metropolitan court order denying Defendant's motion to suppress, however, focuses on the officer's testimony about her observations of Defendant's irregular driving, including that, when pulling over, Defendant parked partially off the street near a sidewalk, obstructing traffic; while Defendant was driving, both of the driver's side tires were over the dividing line a full tire length; Defendant drove back and forth between lanes; Defendant weaved within his own lane; and Defendant drove at a high rate of speed. [RP 68-69; *see also* RP 144, 147-49] As such, the metropolitan court judge denied Defendant's motion to suppress, because these facts indicated that the officer had reasonable articulable suspicion that Defendant committed "a violation of the traffic laws and/or that Defendant was driving while intoxicated." [RP 69, ¶ 13] As such, the metropolitan court judge did not convict Defendant of failure to maintain his lane [RP 3], nor did

the metropolitan court cite the failure to maintain lane statute, NMSA 1978, § 66-7-317 (1978), as a basis for denying Defendant's motion to suppress.  [RP 69 ¶ 13]

{5}    In its memorandum opinion, the district court observes that the applicable law regarding reasonable suspicion provides that for a stop to be justified at its inception, the officer, looking at the totality of the circumstances, must be able to form a reasonable suspicion that the individual in question is engaged in or is about to be engaged in criminal activity. *See, e.g., State v. Urioste*, 2002-NMSC-023, ¶ 10, 132 N.M. 592, 52 P.3d 964. In addition, "[r]easonable suspicion must be based on specific articulable facts and the rational inferences that may be drawn from those facts." *State v. Flores*, 1996-NMCA-059, ¶ 7, 122 N.M. 84, 920 P.2d 1038; *see State v. Hernandez*, 1997-NMCA-006, ¶ 20, 122 N.M. 809, 932 P.2d 499 ("Reasonable suspicion is judged by an objective standard which evaluates whether the facts available to the officer would warrant the officer, as a person of reasonable caution, to believe the action taken was appropriate.") (alteration, internal quotation marks, and citation omitted).

{6}    In this case, we agree with the metropolitan court, and the district court's recitation of the applicable law, that the officer's testimony, consisting of her observations of Defendant's irregular driving, supports the metropolitan court's conclusion that the officer had reasonable suspicion to stop Defendant for violation

4

of traffic laws and/or because Defendant was driving while intoxicated. [RP 68-69] Under the circumstances, therefore, we find it unnecessary to consider Defendant's numerous other subissues discussed in the memorandum, consisting of additional arguments concerning whether Defendant's irregular driving constitutes "careless" driving. [MIO 29-35]

{7}     We therefore affirm the denial of Defendant's motion to suppress.

**Issue 1B - Pretextual stop.**

{8}     As Defendant acknowledges in his docketing statement, the metropolitan court did not find that the vehicle stop was pretextual because, once the officer did make contact with Defendant, no questions were asked about Defendant's suspected involvement in other criminal activity. [DS 21] In fact, the officer testified that she pulled over Defendant because of his irregular driving, including that when pulling over, Defendant parked partially off the street near a sidewalk, obstructing traffic; while Defendant was driving, both of the driver's side tires were over the dividing line a full tire length; Defendant drove back and forth between lanes; Defendant weaved within his own lane; and Defendant drove at a high rate of speed. [RP 68-69] Based on this testimony, the metropolitan court concluded that the officer stopped Defendant's vehicle based on reasonable suspicion that Defendant was violating traffic laws and/or driving while intoxicated, and not on any other reason unrelated

to the officer's direct traffic-related observations. [RP 69 ¶ 13] We thus agree with the district court that the totality of the circumstances, summarized in the district court opinion, indicate that there was no unrelated motive to conducting the traffic stop in this case. [RP 146] We also agree with the district court that Defendant did not meet his burden of showing pretext by presenting "sufficient facts indicating the officer had an unrelated motive that was not supported by reasonable suspicion or probable cause[.]" *State v. Ochoa*, 2009-NMCA-002, ¶ 40, 146 N.M. 32, 206 P.3d 143.

**Issue 2 - Sufficiency of the evidence of impairment.**

{9}	Also in his memorandum, Defendant continues to argue that there was insufficient evidence to show that he was impaired by alcohol while driving. [MIO 36] He contends that "[l]ittle weight" should be given to his bloodshot, watery eyes since Defendant contends he was suffering from allergies; the odor of alcohol merely established that Defendant had consumed alcohol earlier; and the "clues" of intoxication that the officer referred to with regard to the field sobriety tests (FSTs) were taken out of context when the baseline for performance on FSTs when intoxicants are not involved has not been established. [MIO 36-38]

{10}	To the extent that Defendant testified that his allergies would have contributed to his bloodshot, watery eyes, and to the extent that he presented other evidence that conflicted with the State's evidence of physical indicia of impairment by alcohol, we

6

are mindful that the trier of fact (in this case the metropolitan court in a bench trial), not the appellate court, weighs the evidence and determines the credibility of the witnesses. *See State v. Barrera*, 2001-NMSC-014, ¶ 12, 130 N.M. 227, 22 P.3d 1177; *see also State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829 (stating that the fact finder is free to reject the defendant's version of the facts); *State v. Mora*, 1997-NMSC-060, ¶ 27, 124 N.M. 346, 950 P.2d 789 (stating that an appellate court does not weight the evidence or substitute its judgment for that of the fact finder), *abrogated on other grounds as recognized by Kersey v. Hatch*, 2010-NMSC-020, ¶ 17, 148 N.M. 381, 237 P.3d 683.

{11} Moreover, we are satisfied that the evidence, presented in metropolitan court and summarized in the district court's memorandum opinion, supports the conclusion that the State presented sufficient evidence that Defendant's driving was impaired by alcohol. [RP 68-69, 147-49] As discussed above, the officer's testimony was that she observed Defendant park partially off the street near a sidewalk when pulling over, in a manner that obstructed traffic; while Defendant was driving, both of the driver's side tires were over the dividing line a full tire length; Defendant drove back and forth between lanes; Defendant weaved within his own lane; and Defendant drove at a high rate of speed. [RP 68-69, 144, 147-49]

{12}    We hold that the officer's testimony about her observations of Defendant's driving, his physical signs of intoxication, and his performance on the FSTs provide substantial evidence that Defendant drove a motor vehicle while impaired to the slightest degree by alcohol.  *See State v. Sanchez*, 2001-NMCA-109, ¶ 6, 131 N.M. 355, 36 P.3d 446 (stating that "under the influence" means that the defendant was less able to the slightest degree, either mentally or physically or both, to exercise the clear judgment and steady hand necessary to handle a vehicle with safety to the defendant and the public); *see also State v. Ruiz*, 1995-NMCA-098, ¶¶ 3-4, 24, 120 N.M. 534, 903 P.2d 845 (holding that probable cause existed where the police officers observed the defendant speeding and weaving, the defendant admitted to drinking, and the officer noticed bloodshot, watery eyes, slurred speech, and a smell of alcohol, and the results of FSTs were mixed), *abrogated on other grounds by State v. Martinez*, 2007-NMSC-025, 141 N.M. 713, 160 P.3d 894; *State v. Hernandez*, 1980-NMCA-138, ¶ 8, 95 N.M. 125, 619 P.2d 570 (concluding that the officer had probable cause to arrest when the defendant had driven in the officer's presence, and the officer noted that the defendant smelled of alcohol and had slurred speech).

{13}    We affirm the metropolitan court, as affirmed by the district court, on this issue.

**Issue 3 - Defendant's refusal to take the breath test.**

**{14}** Lastly in his memorandum, Defendant argues that he did not willfully refuse to submit to the breath test, and he contends that the evidence was insufficient to establish his willful refusal beyond a reasonable doubt. [MIO 40] We are not persuaded.

**{15}** The officer testified that after being read the implied consent act, Defendant refused to take the breath test. [RP 138] The officer then testified that he informed Defendant of the consequences of refusing a breath test and Defendant again refused. [Id.] Defendant testified that although he did not consent to a breath test, he did consent to taking a blood test, believing that it was his right to choose which test he took. [Id.] The officer testified that if an individual requests a blood test, he is told that he has to take a breath test first and afterward his blood can be drawn. [Id.] Defendant once again refused the breath test and was arrested for aggravated DWI. [RP 138-39] As we discussed in the calendar notice, therefore, it is undisputed that Defendant refused to take the breath test, which was the test offered by the officer, preferring to take a blood test. [Ct. App. File, CN1 4]

**{16}** As the district court noted, "[Defendant] made a conscious decision not to take the specific test that was offered by [the officer]." [RP 150] In addition, the district court observed that "[i]f [Defendant] was concerned about the accuracy or reliability of the breath test results he could have taken the breath test and then taken an

9

independent test of his own choosing." [RP 150] *See* NMSA 1978, Section 66-8-109(B) (1993) (stating that "[t]he person tested shall be advised by the law enforcement officer of the person's right to be given an opportunity to arrange for a physician, licensed professional or practical nurse or laboratory technician or technologist who is employed by a hospital or physician of his own choosing to perform a chemical test *in addition to any test performed at the direction of a law enforcement officer*") (emphasis added); *Fugere v. State Tax & Rev. Dept., Motor Vehicle Div.*, 1995-NMCA-040, ¶¶ 15, 21, 120 N.M. 29, 897 P.2d 216.

{17}     We remain persuaded that the metropolitan court's analysis of this issue, as affirmed by the district court, is correct and appropriate. We therefore affirm on this issue.

**CONCLUSION**

{18}     We affirm Defendant's conviction for aggravated DWI (first offense).

{19}     **IT IS SO ORDERED.**

_____

**J. MILES HANISEE, Judge**

**WE CONCUR:**

_____

**MICHAEL D. BUSTAMANTE, Judge**

_____

**JONATHAN B. SUTIN, Judge**